PER CURIAM.
This is an appeal from a judgment of the Family Court of East Baton Rouge Parish, declaring that the natural father of minor children had abandoned his said children, and permitting adoption proceedings to proceed without the consent of the natural father.
Sidney P. Daigle petitioned for the adoption of Dorothy Yvonne Shiver and William Ernest Shiver, the minor children of Mr. Daigle’s wife, Connie Yvonne Hawkins Shiver Daigle, born of her previous marriage to William Roy Shiver. The petition alleges that William Roy Shiver had failed and refused to support his two minor children from January 22, 1966, to the time of the filing of the petition, September 18, 1969, as required by judgment of divorce dated January 7, 1964; that he was an absentee under the provisions of Article 5251(1) of the Louisiana Code of Civil Procedure, his whereabouts being unknown; and that his abandonment of said children should be recognized and decreed such by the Court.
An attorney ad hoc was appointed to represent William Roy Shiver, but upon being notified of the adoption proceedings he retained his own counsel to protest the adoption. The answer filed on behalf of Mr. Shiver alleges that he made child support payments in accordance with the judgment of divorce for a period of time but was forced to stop such payments because his ex-wife refused to abide by the terms of the judgment, particularly as to the method of collection set forth in the judgment, and he prayed for judgment rejecting and denying the petition for adoption filed by Sidney P. Daigle.
The Department of Public Welfare filed its confidential report and the case was tried March 11, 1969. Briefs were subsequently submitted and for oral reasons assigned on April 29, 1969, and dictated into the record, the minor children were declared abandoned by the natural father and Mr. Daigle was permitted to continue the adoption proceedings of the children. The judgment was signed May 5, 1969, and William Roy Shiver appealed therefrom.
Respondent-appellant alleges that the trial Court erred in the following respects: (1) In granting the stepfather the right to adopt the minor children notwithstanding the objection raised by the legal father of the minors; (2) in failing to follow the clear jurisprudence of this State which holds that to permit a step parent to adopt a child or children over the objection of the natural father based on the natural father’s failure to pay support for the *550 minors is only permissible if the natural parent has “arbitrarily and without just cause refused to pay any sum whatever”; and (3) in failing to find that the facts in the instant case clearly indicated that appellant was denied information as to the whereabouts of his minor children deliberately and consciously by his ex-wife; that he had attempted on several occasions to make child support payments in accordance with the judgment of the court; that his failure to make the said payments was “with just cause” and not arbitrary, and, therefore, the petition for adoption by applicant should have been denied.
The issues in this case are largely factual, and must depend upon the discretion of the trial Judge.
In his reasons for judgment the trial Judge found as follows: to-wit:
“Mr. Daigle married Mr. William Shiver’s x-wife. Mr. William Shiver and his wife had these two children by their marriage. Divorce was granted in that case, the mother was given custody of the children and the father, Shiver, was given visitation rights and ordered to pay a certain amount each month for alimony. He was to deliver that money to the mother at the time he picked up the children. The children, I believe, were in Denham Springs and they were with a lady who was not the mother, but was keeping the children there, the mother trying to work. That arrangement was not too satisfactory and Mr. Shiver and his x-wife signed a little agreement that they would deliver the children to her new home in Baker. On two occasions Mr. Shiver went to this new home and instigated an argument with Mr. Daigle, his x-wife’s present husband and they had a fistacuff on two occasions. Mr. Shiver, frankly, admitted that he started it both times. So, after that he didn’t go back there, but he did not rescind that agreement that they had that he would see the children in Baker rather than at Denham Springs.
“ * * * and I might add that following this he ceased to pay and hasn’t paid anything in two years and he gives as justification for not paying the fact that he was not seeing the children as decreed by the Court. Well, there is Hornbook law that individuals can alter a Court’s judgment by mutual agreement. In other words, if I give judgment for $1,000 and the defendant tells the plaintiff I’ll give you $800.00 and call it even, they can do that. That is a good contract and that is what they did in this case and never anything done about it. He made no attempt to find the children or to make his payments. So, under the Statute if you don’t support your wife— that’s LSA R.S. 9:422.1 — if you fail to support your children for a period of one year you are considered as having abandoned those children. That was so held in the Moody case which is a 1967 case. The Moody case cites the LaFitte case and the Ackenhausen case, the two cases that the father of the children relied upon to defeat this adoption. I think by his own testimony Mr. Shiver has abandoned the children and the adoption is, therefore, ordered and the children declared abandoned by the natural father and Mr. Daigle is permitted to continue the adoption proceedings of the children.”
We concur in the finding of the trial Judge.
The law providing for adoption by spouse of one legitimate parent without consent of the other legitimate parent where the other parent fails or refuses to comply with a court order for the support of children is found in LSA-R.S. 9:422.1. That article reads as follows:
“If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grand *551 parents of the child, then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
“(1) The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and
“(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or
“(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.”
We think that the trial Judge correctly found that the father refused to support his children for a period of one year. Mr. Shiver claimed he could not locate the children; that his wife had moved from her former home, which was next door to his father and mother; and that he could not obtain her present address or telephone number in order to get in touch with her. We do not think much of this excuse. If he had wanted to, it would not have been any trouble to locate Mrs. Daigle either through the telephone directory, or the city directory of Baker, or, if necessary, he could have filed a rule for contempt for failure to comply with the order of court, which entitled him to have the children brought to the home of his mother and father, at which time he said he could have delivered the money for their support. He failed to take advantage of any of these and we can only conclude that he was using this as an excuse to avoid making the payments.
Mr. Shiver said that he had taken the matter up with Judge Sartain, former Judge of the Family Court, and that Judge Sartain had told him that the order of court would have to be carried out and not to worry. He is supposed to have contacted Mrs. Daigle but the record fails to disclose any such contact at all. It would not have been difficult at all to summon Judge Sartain to testify in this case, but Mr. Shiver did not see fit to do so. The fact is that he did not see fit to summon Judge Sartain and the presumption must be that Judge Sartain would have testified against him. We are satisfied that Judge Sartain would have readily appeared if he had been summoned or if he had just received a telephone call from the Family Court Judge requesting his appearance, but this did not happen.
We find three cases which bear upon this subject, namely, In Re Ackenhausen, 244 La. 730, 154 So.2d 380; In Re LaFitte, 247 La. 856, 174 So.2d 804; and In Re Adoption of Moody, La.App., 201 So.2d 222.
In the Ackenhausen matter, supra, the natural father had been ordered in 1957 to pay $120.00 a month for the support of his children. The total amount due at the time of the application for adoption was $1440, of which amount the natural father paid $50.00 in March of 1961. In that case the Court found as follows, to-wit:
“Relator says that he made other payments, probably amounting to about one-third of the sum due. However, he did not remember dates or amounts, and was not able to support this vague testimony with any proof whatever. On the other hand, the mother of the children had a complete record of all payments ever received from the father, and this record showed only the above-mentioned $50.00 payment within the year preceding the filing of the petition. The trial judge accepted this record as accurate.
“Relator himself admits that during this period he had savings of approximately $900.00; that he was the owner *552 of an automobile on which he had agreed to pay $122.90 a month, and the owner of a boat for which he was paying $98.74 a month. Also significant is the fact that relator attempted in 1960 to have the Nevada court reduce the alimony payments to $40.00 a month for each child, but that the court (even though no opposition was made to his application) refused to change its order as to the amount of these payments. Relator was a croupier employed at various gambling establishments in Las Vegas, Lake Tahoe, and Cuba, and earned as such $22.00 to $25.00 a day. Although he testified that he was unemployed part of the time in the year preceding the filing of this adoption proceeding, even during that time, if his testimony is true, he was being paid unemployment compensation of $150.00 a month.

“We agree with relator, however, that the provision of the statute dealing with support could only mean that consent is dispensed with when the failure to comply with the order of the court is without just cause. The Legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only where the parent refuses to comply with the order or fails to comply with the order without justification. To say that the consent of a legitimate parent is not required when his failure to comply with an order of support was due to sickness or some other situation beyond his control would be absurd, and the Legislature never intended for the statute to be given such an interpretation.
“Whether a legitimate parent has failed or refused to comply with an order of support so that consent is not required for adoption will, of course, have to depend on the facts of each case. If a parent has arbitrarily and without just cause refused to pay any sum whatever, no problem is presented. Also, if the payments have been insignificant when compared with the amount ordered by the court to be paid and the parent cannot show that the failure to pay has been with just cause and therefore excusable, the order to support has not been complied with and consent is not required.”
In the LaFitte case, supra, the father of the children opposed the adoption but admitted his failure to make payments between October 1962 and December 1963. He had said that inasmuch as the children had been removed from the jurisdiction of the Court and taken to the Philippine Islands, a foreign country, making it impossible for him to exercise his visitation rights, he was relieved of the obligation of making these payments; and further that no protest was ever made by his former wife over his failure to make such payments and, in fact, when he learned that she and his children had returned he tendered the full amount of all payments for child support not previously made. The Court ruled as follows:
“In our recent decision in In re Ackenhausen, 244 La. 730, 154 So.2d 380, in determining the effect of the amendments to R.S. 9:422 and their proper application, we said: ‘We think the legislature * * * was attempting to define the conduct which would be a failure of the parent to fulfill his responsibility of support of his child, whereby the parent would forfeit his parental rights,’ and the only time consent of both parents is not needed is ‘when the failure to comply with the order of the court is without just cause.’ ‘The legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was *553 for reasons beyond his control.’ However, in this same decision we emphasized that ‘we do not propose to give the statute such a strict interpretation as to make it ineffective and inoperative/ and that ‘To hold that under the statute there must be a complete refusal or failure to pay any sum whatever for one year before consent would be dispensed with would be to disregard completely the obligation which a parent has to provide support and maintenance for his child.’ (Emphasis already supplied.)
“It is apt to observe here that Hutchinson does not claim his failure to comply with the court’s order for support of his children was due to ‘reasons beyond his control.’ In his answer he specifically set out that his reason for not making these payments was due to the fact he thought he was relieved of this obligation because of the removal of the children from the court’s jurisdiction to a foreign country where he could not exercise his visitation rights. Yet, as pointed out by the learned trial judge in his reasons for authorizing the adoption without the consent of Hutchinson, he ‘apparently made no issue of the effect of this absence on his obligation in December of 1961 when Mr. LaFitte was back in the United States and contacted him about the past due payments. He continued to make payments in 1962 until October or November, during all of which time the children were in the Philippine Islands.’
“From our appreciation of the evidence and facts of this case, we conclude, as did the trial judge, that Hutchinson’s failure to comply with the district court’s order of support for his children for a period exceeding one year was without just cause, and he thereby forfeited his parental rights; consequently, under the specific provisions of R.S. 9:422.1, his consent to the adoption of the subject children is not necessary. In re Ackenhausen, supra.
“We think this case and the Acken-hausen case are, in all material aspects, factually similar. In both cases the step-father of the children was supporting them during the period in which the fathers failed to pay child support, so that in neither case were the children in actual need because of their neglect and failure to comply with the court orders fixing the amount they were to pay as alimony for the maintenance of their children. Neither Ackenhausen nor Hutchinson assigned as an excuse for this failure to pay for the care of their children that this was due to reasons beyond their control. While Acken-hausen gave as his reason failing to pay child support his unemployment during a part of the year, he did make a token payment of $50 during this period and claimed to have given his children gifts of such value as to approximate the amount of the alimony due. We held this was insufficient to preserve his parental rights.
“Hutchinson, on the other hand, admitted he was fully employed, had not been ill or lost time from work during the entire 14 months he failed to make any contribution to the support of his children. While he, as had Ackenhausen, professed great love and affection for his children, the record discloses he remarried within a few days after his wife secured the divorce against him on December 16, 1958, and, as will be shown later, his alimony payments were not made in varying amounts with the regularity indicated by the Court of Appeal in its opinion. Further, the contributions to his children during this 14-month period in the way of gifts and cash were of a comparatively minor value and given principally as birthday and Christmas presents. Yet it was established that during this period of non *554 payment he had a savings account in excess of $800, just as Ackenhausen had one in excess of $900 during the 12 months he failed to contribute to the support of his children.
“Hutchinson’s claim he should not be deprived of his parental rights for failing to make payments during this 14-month period because he tendered payment of all past due alimony prior to the institution of the instant proceeding, and particularly since his former wife never protested his failure to promptly pay alimony support for his children, is without merit, and not supported by the evidence.
“We think, as did our learned brother below, that ‘If it were possible to pay up an arrearage in the twelfth month of each year and thereby defeat each effort of the adoptive step-parent to adopt children he is attempting to be a father to, the intent of the legislature in adopting R.S. 9:422.1 would surely be defeated.’ ” (Emphasis already supplied.)
In the Moody case, supra, our brothers of the Second Circuit held as follows:
“The judgment of the trial court granting the adoption was predicated on the provisions ai LSA-R.S. 9:422.1 which provide that where the spouse of the petitioner for the adoption has been granted custody of the child by a court of competent jurisdiction and the other legitimate parent has failed to comply with the court order for support for a period of one year, the latter’s consent is not necessary.
“In reaching its conclusion the trial court correctly ruled that the recent decisions of the Supreme Court In Re LaFitte, 247 La. 856, 174 So.2d 804 (1965) and In Re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963) are controlling as to the issues presented in the instant case. In LaFitte the natural father of the children admittedly failed to make support payments for over a year and asserted that he was justified in doing so because his former wife had taken the children to the Philippines where her husband was employed in the military service. The Supreme Court held the parental rights of the natural father had been forfeited, since it was not shown that his failure to make payments for support of the children was due to circumstances over which he had no control. The court quoted the following from the prior case of Ackenhausen, supra, in determining the effect and application of LSA-R.S. 9:422.1:
“ ‘We think the legislature * * * was attempting to define the conduct which would be a failure of the parent to fulfill his responsibility of support of his child, whereby the parent would forfeit his parental rights,’ and the only time consent of both parents is not needed is ‘when the failure to comply with the order of the court is without just ccmse.’
‘The legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control.’ However, in this same decision we emphasized that ‘ive do not propose to give the statute such a strict interpretation as to make it ineffective and inoperative,’ and that ‘To hold that under the statute there must be a complete refusal or failure to pay any sum whatever for one year before consent would be dispensed with would be to disregard completely the obligation which a parent has to provide support and maintenance for his child.’ (The emphasis has been supplied.)” (174 So.2d 804, 806).
“The effect of the statute is to cause a forfeiture of the right of the parent to give consent where, by reason of his *555 conduct, he has evidenced a failure to fulfill his responsibility of supporting his children during the period provided by the statute, and it is only when failure to comply with the order of the court is with just cause that the consent of both parents is essential to the adoption.
“In the present case appellant is shown to have had ample means and income from which to make payments and knew that such were to be made to the Clerk of the Collinsworth Court and when made would be forwarded for the support of Gwendolyn and Dorothy Faye. Under the established facts Moody refused to make support payments to the Clerk of Court for no other reason than he thought he was being denied visitation rights. This was not an adequate excuse and in our opinion he has failed to show he was without fault in refusing to make judgment payments.”
We have been cited no cases contrary to these three cases. For these reasons we therefore think that the judgment of the lower Court ruling the children in question to have been abandoned by their natural father and allowing the adoption by the stepfather without the consent of the natural father was correct and should be affirmed, all costs, including cost of this appeal, to be borne by the appellant.
Affirmed.