BOUTALL, Judge.
Freeman E. Blackburn sought to adopt the two daughters of his wife by a previous marriage. The children’s father opposed the adoption. The Juvenile Court denied the adoption and the stepfather has appealed.
The Barrios girls, Sheila Dee Ann born November 30,1965, and Monica deSha, born November 16, 1970, were the only children of the marriage of Lynda Punzo and Wayne T. Barrios. The couple was divorced on February 13, 1976. The decree awarded to the wife permanent custody and $500 per month child support but made no mention of visitation rights. Lynda Punzo and Freeman E. Blackburn were married on June 30, 1978, and moved to Saudi Arabia in the fall of 1978. Mr. Blackburn was employed there as a chemical engineer with Aramco. The girls went with their mother and stepfather, but Sheila chose to return to New Orleans in July, 1980 to live with her maternal grandparents and attend high school in New Orleans.
On July 17, 1981, Mr. Blackburn filed a petition for adoption. One hearing was held on July 23, 1981, primarily to perpetuate Mr. Blackburn’s testimony before he had to return to Arabia. The second hearing was held on September 29,1981. Judgment was rendered in favor of Mr. Barrios on December 14, 1981, dismissing the petition for adoption. This appeal followed.
The issues before us are whether Mr. Barrios’s failure for one year to make payments in accordance with the divorce judgment obviated the need for his consent under R.S. 9:422.1; whether the parent-child relationship between father and daughters has been a continuing and loving one so that the adoption would not serve the best interest of their children, regardless of the father’s failure to support.
Mrs. Blackburn’s case is primarily based on R.S. 9:422.1 as amended by Acts 1980, No. 462, Sec. 1, eff. July 21, 1980, which provides in pertinent part:
“If the spouse of the petitioner is the legitimate parent of the child ... then the consent of the other legitimate parent is not necessary when the spouse of the petitioner ... or the mother ... have been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.

(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.”
The Blackburns argue that Barrios’s failure to pay child support fulfills the requirement of section (1) and his consent is unnecessary.
Barrios made payments of child support from the date of the decree until the fall of 1978 (when the Blackburns had moved to Saudi Arabia) when he reduced the payments to $300. Barrios admits that around August, 1979, he stopped making payments entirely, but opened a savings account for his daughters and stated that he made regular deposits.
The Juvenile Court found that Barrios’s failure to pay support was not “total and unjustified” and that he had made “a genuine effort to at best save the support money *484 for the children.” Accordingly, the condition of non-support under the statute was not met and the father's consent was required. We disagree with the court’s conclusions and its application of the law as to this issue.
Upon court order, Mr. Barrios produced a savings certificate for $2500.00 in the name of “Monica and Shelia (sic) Barrios (Minors) by Wayne T. or Virginia L. Barrios,” dated October 18, 1980. A quarterly statement for December 31, 1980, through March 31, 1981, of a savings account captioned in the same manner indicated a balance of $1006.36 as of December 31 and of $1281.64 as of March 31. Although the total deposited in behalf of the children amounted to $3731.64, as Mr. Barrios failed to provide the court with earlier bank records as ordered, it is uncertain when the deposits began. The record fails to show the opening date for the account. It is impossible to determine what portion of the support requirement was made during the year before the petition was filed. Under the Supreme Court’s pronouncement in Haynes v. Mangham, 375 So.2d 103 (La. 1979), at 105:
“... If a parent under court order to support a child has not made a significant support payment within a year prior to filing of the petition for adoption, that parent loses the right to prevent the adoption by withholding consent.”
In Haynes, the divorced father’s payment of 25% of his yearly obligation was considered a significant support payment.
Substituted savings account deposits for direct child support payments to ex-wife were held to constitute failure to pay support in In re Jones, 337 So.2d 283 (La.App. 2d Cir.1976), writ refused December 8, 1976. There, as in the case before us, the savings account was so set up that neither the mother nor the children had access to the funds. Child support is the property of the mother who was granted custody and is under her control. Coleman v. Coleman, 209 So.2d 801 (La.App. 2d Cir. 1968); Simon v. Calvert, 289 So.2d 567 (La. App. 3rd Cir.1974). The money was not out of control of the non-custodial parent and was not available for the support of the children. It is submitted that, even if the savings deposits made by Barrios were adequate under the Haynes decision, unless the mother had access to the funds, Barrios had not made court ordered support payments and had relinquished his right to withhold consent to his daughter’s adoption.[1]
The Supreme Court in In Re Ackenhausen, 244 La. 730, 154 So.2d 380 (La.1963) took up the problem of defining failure to support under R.S. 9:422.1(1). In interpreting legislative intent, the Court said, 154 So.2d at 383:
“We agree ... that the provision of the statute dealing with support could only mean that consent is dispensed with when the failure to comply with the order of the court is without just cause. The Legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only where the parent refuses to comply with the order or fails to comply with the order without justification....
Whether a legitimate parent has failed or refused to comply with an order of support so that consent is not required for adoption will, of course, have to depend on the facts of each case. If a parent has arbitrarily and without just cause refused to pay any sum whatever, no problem is presented. Also, if the payments have been insignificant when compared with the amount ordered by the court to be paid and the parent cannot show that the failure to pay has been with just cause and therefore excusable, the order to support has not been complied with and consent is not required.”
Ackenhausen was followed by In Re Lafitte, 247 La. 856, 174 So.2d 804 (La.1965), a *485 case with facts similar in some respects to those of the instant case. The wife had remarried and moved with her husband and children to the Philippine Islands. The children’s father ceased making payments some time after they had moved overseas and argued that he felt he was not required to support the children once they had been moved to a foreign country, where he could not exercise his visitation rights. In the Lafitte case, as in ours, the stepfather supported the children and the children were not in need because of the father’s failure to support. No employment or financial problem preventing payment was claimed by the father.
In the instant case, Barrios attempted to excuse his failure to pay on the basis of Mrs. Blackburn’s having opened a bank account in New Orleans to receive the support payments and then closed it without notifying him. She opened a second account but apparently supplied an incorrect account number to Barrios. He testified that he did not want to send the money to Arabia and stopped making payments because he felt the money “was just going in a hole.” Although the record bears out poor record-keeping on both sides and the parties’ failure to agree on a method for Mr. Barrios to make his payments, the problem was not an insoluble one, and neither party was alleged to be uneducated or ignorant. Under the Lafitte decision, the move to a foreign country by his ex-wife was insufficient ground for Mr. Barrios’s stopping all support. His failure to pay does not fall under the “just cause” exception to the statute enunciated in Ackenhau-sen, as he did not attempt to defend on the basis of being unemployed, ill, or in any way financially unable to pay. It is, as the statute specifies, a refusal to comply with a court order.
The petitioners apparently rely on a strict interpretation of R.S. 9:422.1: if the legitimate parent’s right to withhold consent has been forfeited, all consideration of the best interest of the child is foreclosed and the adoption must be granted. In the Ackenhausen and Lafitte cases, the adoptions were granted on this basis. However, in Adoption of Latiolais, 384 So.2d 377 (La.1980), the court denied the adoption even though the father clearly had failed to pay court ordered support without just cause. The Court said, at 378:
“R.S. 9:422.1 does not set the criteria to be used in determining whether or not an adoption shall be granted. It applies only to the narrow question of whether parental consent shall be required when a minor’s adoption is sought. The best interest of the child is the major standard to which a court must look before it can determine when or whether to order an adoption. R.S. 9:432....”
R.S. 9:422.1 was enacted by the Legislature in 1958 and was amended in 1960,1962 and 1980. Legal scholars have noted that the statute does not remove the court’s power to deny an adoption, even where the noncustodial parent’s consent is not required. See Robert A. Pascal, Legislative Symposium: 1960 Regular Session — Civil Code and Related Subject Matter, Adoption, 21 La.L. Rev. 56 (1960) and Lee Hargrave, The Work of the Louisiana Appellate Courts for the 1967-1968 Term, Adoption, 29 La.L.Rev. 1978 (1969).
In Latiolais the petitioner failed to show that the adoption was in the child’s best interest. The court found that because the adoption would rupture a continuing close relationship between the legitimate father and his child, it was not in the child’s best interest. The adoption was denied under R.S. 9:432(B), which allows the court to exercise its discretion in granting or denying the final decree of adoption.[2]
*486 The court in the case before us found that:
“The facts of this case reveal a continuous relationship with the children, notwithstanding some apparent communication difficulties. However, we cannot say that the parental relationship of this father is at all detrimental to the children; on the contrary we feel that the relationship is valid and hopefully will continue in the lives of these children. Additionally, there has been no specific evidence introduced by counsel to show that the adoption is in the best interest of the children.” Reasons for Judgment, at 3.
The record holds a paucity of testimony either as to the desirability of the adoption or as to a father-children relationship so close and loving that it should be preserved. The older daughter, Sheila, was fifteen years, ten months old at the time of the second hearing. Her testimony indicated that she did not want to see or talk with her father, that he only wanted to see her at his own convenience and not hers. The father did make spasmodic efforts to contact her in New Orleans. As she will be seventeen years old November 30,1982, and will soon reach majority there is no reason now to disturb the judge’s decision in her regard.
Monica, the younger daughter, was present at the July 23; 1981 hearing, at which time she was ten years, seven months of age. She was sworn in but not questioned at all. There is no hint of how she feels about her father or stepfather. Later testimony of the mother and father indicated that there had been occasional letters and cards, and brief visits when the children were in New Orleans each year for vacations. The record suggests that any contact between the father and children had to be arranged through the maternal grandparents. Mrs. Blackburn had agreed to sign a permission form allowing Mr. Barrios to pick up Sheila at school, which was near his office, but instead gave permission only to the grandparents. In order to take Sheila home to Covington with him, Mr. Barrios had to cross the river to Algiers to pick her up, adding considerable time to an otherwise easy trip. He commented that they did not refuse to let him see the children but made it very difficult.
Neither Mr. Blackburn, the petitioner, nor Mrs. Blackburn was questioned as to why the adoption was requested or how it would benefit the children. Mr. Barrios stated that he loved the children and did not want to lose them because he was physically unable to have any more. It is puzzling that he has refused from the beginning to employ counsel and did not respond to the court’s second request for a memorandum following the hearing and before judgment, nor has he made an appearance in this court.
Nevertheless, the Juvenile Court is given much discretion in adoption matters, and R.S. 9:432(B) provides that the court may decree the adoption or may deny the adoption. The basic consideration shall be the best interest of the child. On the proof shown in this record we cannot say that the trial judge erred in concluding that the adoption should be denied. Accordingly, we affirm the judgment appealed.
AFFIRMED.

. As far as the record shows, Barrios was $13,-700 behind (disregarding the bank deposits) at time of filing adoption and has paid nothing further.

. R.S. 9:432(B) reads as follows:
“B. The court, after hearing and after taking into consideration information from all sources concerning the adoption, may enter a final decree of adoption; or it may deny the adoption. The basic consideration for his decree and all others shall be the best interest of the child. The clerk of court shall forward a certified copy of this decree to the department. The withdrawal of consent by the legitimate parent or parents, by the mother or by the father who has acknowledged by *486 notarial act as provided by Article 203 of the Civil Code, shall not bar a final decree of adoption. As amended Acts I960, No. 250, Section 1; Acts of 1960, No. 268, Section 4.”