HAWTHORNE, Justice.
 

 We granted certiorari in this case on application of Edward John Trascher, Jr., to review a judgment of the Court of Appeal which affirmed a judgment of the Juvenile Court for the Parish of Jefferson granting the petition of respondent William B. Ackenhausen for adoption of Rick Edward Trascher, born in October, 1953, and Toni Curtis Trascher, born in February, 1956. This adoption was granted over the objection of relator, the legitimate father of these children, his contention being that the adoption should not be permitted because he has not consented to it. See 146 So.2d 37.
 

 The two minor children here involved were born of the marriage of Martha Elena Blake and Edward John Trascher, Jr., the relator. These parties were, divorced , in Clark County, Nevada, in 1957. In the divorce decree the mother was awarded the custody and control of the two children, and the father was ordered to pay $120.00 per month for the support of the children, or $60.00 per month for each child. Immediately after the divorce the mother returned to. Louisiana to live with her parents. In March, 1959, she married William B. Ackenhausen, who is here petitioning for the adoption of his wife’s children. The children have been living .with their mother and stepfather ever since a short time after this marriage.
 

 
 *735
 
 Respondent takes the position that the consent of the legitimate father in this case was not necessary under the provisions of LSÁ-R.S. 9 :422.1 as amended by Act 268 of 1960, the act in force when this proceeding was instituted.
 

 This legislation was prompted apparently by our decision in the case of Madere v. Long, 231 La. 498, 91 So.2d 771, in which an application for adoption made by the stepfather was denied on the ground that the consent of the legitimate father had not been obtained. The mother of the child, who had given her consent to the adoption, had obtained a divorce from the father of the child and in the decree of divorce had been given the care, custody, and control of the minor. She subsequently married' the applicant for adoption, and the child was living with the mother and her second husband, the petitioner, who was providing for the child’s care and support. The applicant for the adoption contended that the consent of the legitimate father was not necessary. In denying this contention the court stated that the dispensing with consent in such a case was a matter that addressed itself to the Legislature and not to the court. That case was decided in December, 1956, and the Legislature in 1958, apparently taking cognizance of the above statement, passed Act 501 providing that in such a case the consent of the legitimate father was not required under certain conditions. This act amended Title 9 of the Revised Statutes of 1950 by adding a section designated as 9:422.1. This section was amended by Act 268 of 1960, and as thus amended is the law with which we are here concerned. It reads:
 

 “If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary if the following conditions exist:
 

 “1. The spouse of the petitioner or the grandparent or grandparents have been granted custody of the child by a court of competent jurisdiction and
 

 “2. the other parent has refused or failed to comply with a court order of support for a period of one year or more.”
 
 [1]
 

 The act provides that two conditions must exist before the consent of the legitimate parent in such a case is dispensed with. One of these conditions is concerned with custody, the other with support.
 

 As to the condition of custody, the Court of Appeal in its opinion in this case recounted all the facts in detail, and there is no need for us to discuss them here. That court concluded that the condition regarding custody existed in the instant case, and we think its conclusion and the reason
 
 *737
 
 ing upon which that conclusion is based are sound and correct. Moreover, in view of relator’s argument in this court that the custody condition contemplates full custody so that the other parent is deprived even of visitation rights, we would like to add that if the custody provision contemplates
 
 unfitness
 
 of the parent, it would mean that the custody decree must deprive the other parent of all visitation rights. We do not think, however, the custody provision was intended as relating to
 
 unfitness
 
 of the parent, or having to do with his failing to comply with his parental responsibility. We think this provision was made a part of the exception to prevent a child from being uprooted from its surroundings, and to prevent the upset by adoption of a custody decree wherein it had been adjudged that the best interest of a child required it to be with one parent (or a grandparent) rather than the other parent. Tho spouse of the petitioner here had been granted custody ¡tvithin the meaning of this provision, therefore, notwithstanding the father had a right of visitation.
 

 We granted the writ in this case primarily to review the Court of Appeal’s finding that the second condition, dealing with support, also existed. This in our view is the condition relating to unfitness of the parent or to his failure to fulfill his parental responsibility.
 

 The petition for adoption was filed in this case on October 4, 1961, and petitioner has proven to our complete satisfaction that from October 1, 1960, up to the time the suit was filed (a few days more than a year) relator had made only one payment of $50.00 under the order of the Nevada court providing that he pay $120.00 a month for the support of these children. In other words, the total support money due for this period was $1440.00, of which amount relator in March, 1961, paid $50.00.
 

 Relator says that he made other payments, probably amounting to about one-third of the sum due. However, he did not remember dates or amounts, and was not able to support this vague testimony with any proof whatever. On the other hand, the mother of the children had a complete record of all payments ever received from the father, and this record showed only the above-mentioned $50.00 payment within the year preceding the filing of the petition. The trial judge accepted this record as accurate.
 

 Relator himself admits that during this period he had savings of approximately $900.00; that he was the owner of an automobile on which he had agreed to pay $122.-90 a month, and the owner of a boat for which he was paying $98.74 a month. Also significant is the fact that relator attempted in 1960 to have the Nevada court reduce the alimony payments to $40.00 a month for each child, but that the court (even though no opposition was made to his application)
 
 *739
 
 refused to change its order as to the amount of these payments. Relator was a croupier employed at various gambling establishments in Las Vegas, Lake Tahoe, and Cuba, and earned as such $22.00 to $25.-00 a day. Although he testified that he was unemployed part of the time in the year preceding the filing of this adoption proceeding, even during that time, if his testimony is true, he was being paid unemployment compensation of $150.00 a month.
 

 The basis for requiring the consent of parents to adoption is the natural right of the parent to his child. If a parent does not fulfill his parental responsibilities to his child, there is a reasonable basis for dispensing with his consent. We think the Legislature here was attempting to define conduct which would be a failure of the parent to fulfill his responsibility of support of his child, whereby the parent would forfeit his parental rights.
 

 It is the settled jurisprudence of this court that adoption statutes are to be strictly complied with, In re Brands’ Estate, 153 La. 195, 95 So. 603; Owles v. Jackson, 199 La. 940, 7 So.2d 192; State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163; and it was said in a footnote in Green v. Paul, 212 La. 337, 31 So.2d 819, that laws providing for adoption must be given a strict construction as they are in derogation of the natural right of a parent to his child.
 

 In construing the statute here under consideration which dispenses with consent in adoption proceedings under certain conditions, we are mindful of the above pronouncements, but we do not propose to give the statute such a strict interpretation as to make it ineffective and inoperative. To hold that under the statute there must be a complete refusal or failure to pay any sum whatever for one year before consent would be dispensed with would be to disregard completely the obligation which a parent has to provide support and maintenance for his child. Such a holding would permit an unworthy parent, in complete disregard of his obligation to his child, to prevent an adoption which might be to the best interest of the child by making a token payment of a nominal sum once each year insufficient to provide for maintenance and support. Such a strict construction would lead to absurd consequences and make the statute meaningless and ineffective.
 

 We agree with relator, however, that the provision of the statute dealing with support could only mean that consent is dispensed with when the failure to comply with the order of the court is without just cause. The Legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only
 
 *741
 
 where the parent refuses to comply with the order or fails to comply with the order without justification. To say that the consent of a legitimate parent is not required when his failure to comply with an order of support was due to sickness or some other situation beyond his control would be absurd, and the Legislature never intended for the statute to be given such an interpretation.
 

 Whether a legitimate parent has failed or refused to comply with an order of support so that consent is not required for adoption will, of course, have to depend on the facts of each case. If a parent has arbitrarily and without just cause refused to pay any sum whatever, no problem is presented. Also, if the payments have been insignificant when compared with the amount ordered by the court to be paid and the parent cannot show that the failure to pay has been with just cause and therefore excusable, the order to support has not been complied with and consent is not required.
 

 In the instant case the refusal or failure to pay is shown by the facts to be without excuse and without just cause. When the Nevada court in this case determined that $1440.00 a year was the proper amount to be paid for the support of the children and so ordered, payment of $50.00 within the year could not possibly be considered as adequate or reasonable support; but, on the contrary, for all practical purposes is a cessation of support from the viewpoint of the child. Consequently we find that the second condition of the statute, that dealing with support, also existed here.
 

 The judgment of the Court of Appeal is affirmed. Costs are to be paid by relator.
 

 SUMMERS, J, concurs.
 

 [1]
 

 . This section has been amended by Act 106 of 1962.