CHASEZ, Judge.
This is the second proceeding instituted by William J. Resseguet, Jr. for the adoption of the minor child, Brett Michell Bick-erstaff.
The child involved is the issue of the wife of petitioner by a prior marriage to Richard J. Bickerstaff. Richard J. Bickerstaff, the father of the child, vigorously opposes the adoption. From a judgment of the Juvenile Court for the Parish of Orleans, State of Louisiana, granting the adoption, Richard J. Bickerstaff has appealed.
Plaintiff herein, William J. Resseguet, Jr., is proceeding under the provisions of LSA-R.S. 9:422.1, which reads as follows:
“§ 422.1 Adoptions by step-parent, grandparent; consent.
“If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
(1).The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and
(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or
(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents. Added Acts 1958, No. 501, § 1, as amended Acts I960, No. 268, § 1; Acts 1962, No. 106, § 1.”
The evidence in this record discloses that Richard J. Bickerstaff and Mrs. Charlen E.. Hill were married on March 5, 1960 and thereafter established their matrimonial domicile in the Parish of Orleans, State of Louisiana; that their child Brett Michell Bickerstaff was horn on Januaiy 24, 1962.
On March 21, 1962, Charlen E. Hill Bick-erstaff filed suit for a separation a mensa et thoro against her husband, Richard J. Bickerstaff, and on November 15, 1962' judgment of the Court was rendered in her favor, granting the separation and granting her the permanent care, custody and control of the minor child, Brett Michell Bicker-staff. Subsequently, on the 4th of December, 1963, Charlen E. Hill Bickerstaff, filed suit against her husband for a divorce a vinculo matrimonii and, on January 10, 1964 judgment was rendered granting the divorce and awarding her the permanent care, custody and control of the minor child, Brett Michell Bickerstaff.
In both the separation and divorce proceedings the District Court awarded Char-len Hill Bickerstaff alimony at the rate of $35.00 per week for the support of the minor child, Brett Michell Bickerstaff.
The record reveals that Mr. and Mrs. William J. Resseguet, Jr. were married on June 11, 1964, and that the child, Brett Michell Bickerstaff, has lived with them since then; that William J. Resseguet, Jr. is engaged in racing horses for his livelihood and for that purpose resides in tire City of New Orleans for the duration of the racing season, approximately three or four-months. He then moves to and resides in Detroit, Michigan, for approximately eight months while conducting his racing business on tracks in Michigan, Maryland and other nearby areas. He therefore lives in New Orleans from November to the middle of March, and in Detroit from March until November, when he again returns to New Orleans.
*119 That on December 14, 1964, approximately six months after his marriage to Charlen Hill Bickerstaff, William J. Res-seguet, Jr. filed a petition for the adoption of Brett Michell Bickerstaff, proceeding No. A-7755 of the Orleans Parish Juvenile Court, which effort by William J. Resseguet, Jr. to adopt the child was approved by his wife. Richard J. Bickerstaff opposed this adoption, and on February 2, 1965 it was dismissed.
The second proceeding to adopt the child by Mr. William J. Resseguet, Jr., bearing the Number A-8391 of the Docket of the Orleans Parish Juvenile Court, also approved by his wife, was filed on November 26, 1965, a bare ten months after the dismissal of the first petition to adopt.
The crux of the complaint in this particular matter against Richard J. Bickerstaff is that he is unworthy as a parent, primarily for the reason that he has not provided for the maintenance of the child; and by virtue of the provisions of R.S. 9:422.1, above quoted, the adoption herein sought should be granted.
The record shows that on February 7, 1965, Mrs. Resseguet signed a receipt acknowledging that $755.00 was paid her covering alimony due and owing in full through February 7, 1965. This receipt reads as follows:
“February 7, 1965.
“I acknowledge receipt of Seven Hundred and Fifty-Five Dollars ($755.00) for payment in full through February 7, 1965 for child support of Brett M. Bickerstaff.
“The alimony and child support is hereby paid in full to date.
/S/ MRS. WILLIAM J. RESSEGUET, JR.”
The record also shows that other payments were made as follows during the year 1965.
Feb. 10, 1965, for the week ending Feb. 13. $35.00
Feb. 18, 1965, for the week ending Feb. 20 . 35.00
Feb. 25, 1965, for the week ending Feb. 27 . 35.00
March 3, 1965, for the week ending March 5. 35.00
March 12, 1965, for the week ending March 13. 35.00
The record further shows that the District Judge signed an order permitting her to remove the child from the jurisdiction of the Court “on March 14, 1965, returning about November 14, 1965”, (this was in order to permit Mrs. Resseguet and her child to accompany her husband while taking care of his racing business in the States of Maryland and Michigan), and likewise shows that the Court entered its order in the record to the following effect:
“IT IS ORDERED by the Court that the alimony and support of the minor child, Brett Michell Bickerstaff, being paid by defendant in the sum of $35.00 per week, be suspended, commencing March 11, 1965, until such time as the Court is notified that the minor child, Brett Michell Bickerstaff, is again within the jurisdiction of this Court and that the defendant is again able to visit his child.1’
The minor child, Brett Michell Bicker-staff, did not return to the jurisdiction of the Court until approximately November 24, 1965.
Thus it is apparent that there was no alimony due and owing by Richard J. Bick- *120 erstaff to his former wife for the support of his child at the time that she left Louisiana with the child in March, 1965, and that he was relieved of the payment of any alimony until such time as the Court was notified that the child had returned to the jurisdiction of the Court.
The contention therefore that Mr. Bick-erstaff did not support his child for a year prior to this suit is simply just not true.
The record further discloses that while the child was away from New Orleans during the interim from March to November, 1965, Richard J. Bickerstaff wrote counsel for Mrs. Resseguet on two occasions, i. e. September 17, 1965, and October 19, 1965, to ascertain when the child would return to New Orleans. On November 24th Mrs. Ressequet’s attorney informed Mr. Bick-erstaff by mail that his daughter was back in New Orleans; this letter was received by Mr. Bickerstaff on November 25, 1965. On the next day, November 26, 1965, the present adoption proceeding was filed and an order attached to the petition dated the 15th of December, 1965 was signed by the Court, setting the matter for hearing on the 21st day of January, 1966.
Service of process in this matter was made on Mr. Bickerstaff on January 7, 1966 and apparently this was his first notification of the adoption proceedings having been brought.
In the meantime, on December 21, 1965, Richard J. Bickerstaff filed a rule advising the Court that the child had returned to its jurisdiction and prayed that the Court order Charlen Hill, wife of William J. Resseguet, Jr. to show cause on the 7th of January, 1966 why child support should not be resumed and why defendant should not be granted reasonable visitation privileges. This rule was not tried on the 7th day of January, 1966, apparently for the reason that Mrs. Resseguet was ill, as a certificate issued by Dr. Henry C. McGee, Jr., dated January 10, 1966, was filed in the record indicating that Mrs. Resseguet was in the Southern Baptist Hospital and would be in his office January 14, 1966.
On January 21, 1966 the Juvenile Court proceeded with the trial of the adoption proceedings filed on November 26, 1965 and rendered its judgment granting the adoption on the 26th day of January, 1966.
At no time during the period from November 25, 1965 through this adoption proceeding was Bickerstaff able to see his child, and the record shows that he paid no alimony during this period under advice of counsel.
When it is considered that for eight months of the year 1965 he was unable to see Brett and that it became necessary for him even after the child returned to the jurisdiction of the Court in the latter part of November, 1965 to file a rule directing the matter to the attention of the Court in order to have the privilege of visitation, which rule was set for trial on the 7th day of January 1966, but could not be tried because of laws delays, the alleged illness of Mrs. Resseguet, and other instances beyond his control, and then had made on him the service of process in this adoption proceeding, it must be stated that he had some justification in feeling that the payments should not be made. There is no doubt that the actions of the mother of the child contributed greatly to his inability to see the child, and of course a reading of this record strongly suggests to us the fact that she did not desire him to see Brett.
Richard J. Bickerstaff testified that he loves his child very much. That on his visits she would be more than glad to leave to go with him and would always want to know where they were going and what they would do. She always appeared very glad to see him and she had a very good relationship with his wife, Carolyn, (Bicker-staff has also remarried) and that his wife Carolyn goes out of her way to be nice to the child and makes her as comfortable as she can.
*121 In response to questions directed by the •Court to Mr. Bickerstaff, he testified as .follows:
“Q. Well the support is not the primary question, as I understand it, my primary responsibility is the best interest of the child. Now, do you sincerely believe that not granting this adoption is in the best interest of the child? If so, would you explain why ?
A. Yes, I thought about this long and hard to the point where I discussed it quite frequently in the interest of the little girl. I think the child has an inherent right to know her own father. I know that if the adoption is allowed to take place I will never he allowed to see the child again. I know tlmt. I don’t want the child living in different places throughout the year. I grew up that way and it is not a good thing. I am sure that the racing profession is as fine as anything has to offer and indulge in by the* sic finest people and I have every reason to believe that Mr. Ressequet is one of those people. By the same token there is some bad parts that follow the race track. I don’t want to expose the little girl to that situation. I hope you understand that. If the adoption is granted, I don’t want to say anything against Mr. Resseguet at all, but I don’t want the child following the race track. I don’t think that it is a good environment and having to go to different schools and travel all over the country, and she had the inherent right to know her own father. She is a very friendly person and has accepted me on the most friendly basis. She shows she enjoys being with me. I feel she will grow up to be a very well trained little girl without knowing her, but I think when she is fourteen or fifteen she will want to know her real father.
Q. Have you remarried?
A. Yes.
Q. When?
A. On January 10, 1964.
Q. Have you any children by your present marriage?
A. No.
Q. You have not been employed since September 1965 ?
A. September 1965, that is correct.
Q. How have you maintained yourself through that time?
A. Through my savings and wife’s earnings.
Q. Your wife is employed?
A. Yes. My wife has expressed or backed me in my decisions I make in employment one hundred percent. We naturally had to curtail some of our expenses and that necessitated cutting down our standard of living somewhat.”
The law and the Courts recognize that all children should know their parents, and that parents should have the right to know and enjoy the company of their children, even when the matrimonial relationship is broken, and hence the law provides for custody in the best interest of the child and provides for the right of visitation to the person who does not have the custody.
Adoption is the creature of law, and there is no doubt that in some instances an adoption away from the natural parent or both natural parents would be to the best interest of the child. However, we do not believe that anything in this record warrants the conclusion that Mr. Bickerstaff has forfeited the right to retain the limited parental relationship that he now enjoys under the law with his child, and that his objection to the adoption in favor of William J. Res-seguet, Jr. should be recognized and maintained.
*122 In re Ackenhausen, 244 La. 730, 154 So.2d 380, the Court stated:
“It is the settled jurisprudence of this court that adoption statutes are to be strictly complied with, In re Brands’ Estate, 153 La. 195, 95 So. 603; Owles v. Jackson, 199 La. 940, 7 So.2d 192; State ex rel Simpson v. Salter, 211 La. 918, 31 So.2d 163; and it was said in a footnote in Green v. Paul, 212 La. 337, 31 So.2d 819, that laws providing for adoption must be given a strict construction as they are in derogation of the natural right of a parent to his child.”
See also In Re Hughes, La.App., 176 So. 2d 158.
For these reasons the judgment of the Juvenile Court granting the adoption of the child, Brett Michell Bickerstaff, to William J. Resseguet, Jr., and decreeing that the name of the child be changed from Brett Michell Bickerstaff to Brett Michell Res-seguet is overruled, annulled and set aside.
Adoption overruled, annulled and set aside.