293 So.2d 578 (1974)
Charles RODDEN et ux., Applying for Adoption, Plaintiffs and Appellees,
v.
John R. DAVIS, Defendant and Appellant.
No. 4474.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
Rehearing Denied May 14, 1974.
Writ Refused July 1, 1974.
*579 Mansour & Davis by Michael H. Davis, Alexandria, for defendant and appellant.
Mike Wahlder and James C. Downs, Alexandria, for plaintiffs and appellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
In this matter, plaintiff Charles Rodden, joined in the suit by his wife Diane Lachney, seeks to adopt his two stepchildren, Twanda Gail Davis and Gary Lynn Davis, who are the issue of the marriage of plaintiff wife Diane by her previous marriage with defendant John R. Davis. From a judgment granting the adoption defendant has appealed.
The basis for the requested adoption herein is sections (1) and (2) of LSA-R.S. 9:422.1, the whole of which statute reads as follows:
§ 422.1 Adoptions by step-parent, grandparent; consent
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grand-parents of the child, then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
(1) The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and
(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or
*580 (3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents. Added Acts 1958, No. 501, § 1; as amended Acts 1960, No. 268, § 1; Acts 1962, No. 106, § 1.
The facts show that Diane Lachney was married to defendant John R. Davis on January 31, 1959, from which union were born the two children sought to be adopted; on April 3, 1963, Diane was granted an absolute divorce from Davis with custody of the two children, and Davis was ordered to pay child support in the sum of $30.00 per month. Davis subsequently was erratic in making support payments necessitating frequent legal action on the part of the mother to enforce payments. In September of 1965 Diane, who in the meantime had married plaintiff Charles Rodden, filed criminal nonsupport charges against defendant Davis. The matter was set for trial on November 22, 1965, and on that day, following a discussion in the office of the assistant district attorney, it was agreed by Mr. and Mrs. Rodden and Davis that Rodden would adopt the two children. Davis agreed to allow the adoption provided he would not have to continue making support payments. There is no evidence that Davis executed a written consent to the adoption, but there is no doubt that he orally assented, then and shortly thereafter, when he was interviewed by a Welfare Department case worker in connection with the proposed adoption. For reasons which are not altogether clear, the adoption proceedings were not filed by plaintiffs until September 25, 1972. Defendant paid no support for the children, at least from November 1965 until the adoption suit was filed. After he was served with the adoption papers [shortly after September 25, 1972] he began to send support payments.
The substantial issue presented is whether or not appellant Davis had just cause for withholding support payments from November 1965 through September 1972.
Defendant contends that he failed to make support payments provided for in the 1963 divorce judgment because the agreement of November 1965 absolved him therefrom, and he assumed that the children had been adopted long before, pursuant to the 1965 agreement.
Adoption is a creature of statutory law, and being in derogation of the natural right of a parent to his or her child such statutes are always strictly construed in favor of the parent. In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963). See also Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966); In re Genin, 240 So.2d 46 (La. App. 4th Cir. 1970).
The consent of both parents is required before an adoption will be decreed except in those instances where parental consent has been specifically dispensed with, as in the case of abandonment (LSA-R.S. 9:401 et seq.) or failure to support (LSA-R.S. 9:422.1). In re Genin, supra; In re Merrill, 246 So.2d 207 (La.App. 1st Cir. 1971). See also In re Ackenhausen, supra; Roy v. Speer, supra.
The Louisiana Supreme Court in interpreting LSA-R.S. 9:422.1, said in In re Ackenhausen, supra:
The basis for requiring the consent of parents to adoption is the natural right of the parent to his child. If a parent does not fulfill his parental responsibilities to his child, there is a reasonable basis for dispensing with his consent. We think the Legislature here was attempting to define conduct which would be a failure of the parent to fulfill his responsibility of support of his child, whereby the parent would forfeit his parental rights.
We agree with relator, however, that the provision of the statute dealing with support could only mean that consent is *581 dispensed with when the failure to comply with the order of the court is without just cause. The Legislature never intended by this provision to dispense with consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only where the parent refuses to comply with the order or fails to comply with the order without justification. To say that the consent of a legitimate parent is not required when his failure to comply with an order of support was due to sickness or some other situation beyond his control would be absurd, and the Legislature never intended for the statute to be given such an interpretation.
Whether a legitimate parent has failed or refused to comply with an order of support so that consent is not required for adoption will, of course, have to depend on the facts of each case. If a parent has arbitrarily and without just cause refused to pay any sum whatever, no problem is presented. Also, if the payments have been insignificant when compared with the amount ordered by the court to be paid and the parent cannot show that the failure to pay has been with just cause and therefore excusable, the order to support has not been complied with and consent is not required.
The record shows in the instant case that from the inception of the civil support judgment in 1963 until Davis was finally brought to court on the criminal charge in 1965, he was sporadic in his support payments. His support was said by the mother to be "on and off", and sometimes he would let months go by without paying. This inaction on his part caused the mother to bring him to court frequently, which usually resulted in his finally paying at the courthouse steps.
Defendant made his choice in November 1965 when he was confronted with the criminal charges. He authorized the adoption of his children so that he would not have to support them. From 1965 through 1972 he saw one of the children, and then no more than two or three times. He at no time made inquiry as to their legal status. Even giving credence to Davis' assertion that he thought the children were adopted long ago, the fact remains that he made absolutely no effort to confirm this impression, to check other circumstances attendant to the status or welfare of the children, and paid not one penny for their support for seven years, contrary to the civil judgment of court. It is important to note that defendant Davis does not claim his failure to support his children was for reasons beyond his control. Of significance also is defendant's unequivocal testimony that he would not be willing to pay the accrued sum for the support of the minors from 1965 and thereafter. He relies on the agreement of November 22, 1965, which excused the support payments in exchange for his consent to the adoption. The father's conduct, as found by the trial judge, was tantamount to an abandonment of his children. In this we concur. We find no mitigating circumstances herein to show that defendant Davis has not forfeited his parental rights.
We conclude therefore that defendant's actions as aforesaid show an intention to avoid all parental responsibilities, and that his failure to obey the civil judgment ordering him to support his children was without just cause. Accordingly the consent of defendant John R. Davis is unnecessary because of the provisions of LSA-R.S. 9:422.1(1) and (2). We also conclude, from a perusal of the record that the adoption sought is in the best interest of the children, who have been living in the Rodden home with their mother and stepfather and have been supported by them for some ten years.
Defendant raises the issue of estoppel. In his answer he contends that because of the so-called agreement between plaintiffs and himself in November 1965, he was not required to pay further child support, and *582 therefore plaintiffs are now estopped from asserting non-support as grounds for the adoption.
The cases holding that estoppel is not favored by our courts are legion. One who seeks to avail himself of the application of the principle must establish his right to do so with unusual clearness. A party may not invoke the doctrine of equitable estoppel except in good faith and after having exercised such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Being an equitable remedy, it must be applied with equity. Harvey v. Richard, 200 La. 97, 7 So.2d 674 (1942); Taylor v. Turner, 45 So.2d 107 (La.App. 2nd Cir. 1950); Henderson v. Rossi, 185 So.2d 92 (La.App. 4th Cir. 1966); Muhleisen v. Allstate Insurance Company, 203 So.2d 847 (La.App. 4th Cir. 1967).
In Shirey v. Campbell, 151 So.2d 557 (La.App. 2nd Cir. 1963), the court said at page 560:
"The doctrine [equitable estoppel], however, should not be accorded inequitable application. Intent is an essential element of equitable estoppel. Thus, it is essential to equitable estoppel that the matters claimed to create it were intended to lead the other party to act thereon or that there were reasonable grounds to anticipate that he would so act. The doctrine, however, has no application unless the person invoking it relied, and had a right to rely, upon the representation or conduct of the person, or persons, sought to be estopped. Hence, there is no compliance with this rule requiring reliance upon representations, express or implied, as an element of estoppel where the person pleading the estoppel had actual knowledge or ready or convenient means of acquiring knowledge of the facts concerning which the representations were made. 31 C.J.S. Estoppel §§ 59-71, pp. 236-273."
We conclude that the facts of this case do not warrant application of the doctrine of equitable estoppel. Under the facts and circumstances recited in the chronology of events from 1963 to 1972 we cannot give substance to Davis' excuse for failing to comply with the civil court order to make support payments for his children. He says he thought the children were adopted long ago, but made no effort to determine the true facts. It would have been a simple thing to so determine, which he failed to do. Consequently he cannot now claim to have acted in complete good faith; and as indicated in the cited jurisprudence, good faith is a necessary element in the application of the principle of equitable estoppel.
The judgment of the district court is affirmed at appellant's costs.
Affirmed.