344 So.2d 689 (1977)
In re Arville Wiley STEED applying for adoption
v.
Kenneth E. McKENZIE.
No. 11180.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
*690 Michael F. Little, New Orleans, for plaintiff, appellant.
Larry J. Green, Covington, Haynes L. Harkey, Jr., Monroe, for Kenneth E. McKenzie, appellee.
Before LANDRY, EDWARDS and COLE, JJ.
LANDRY, Judge.
This appeal by Arville Wiley Steed (appellant) is from judgment rejecting his application for adoption of his minor step-children, Kevin DeMarc McKenzie and Christopher Allen McKenzie, without the consent of the children's natural father, Kenneth E. McKenzie (Appellee). We affirm.
The sole issue presented is whether Appellee's consent to the proposed adoptions has been rendered unnecessary because of his alleged failure to pay child support. LSA-R.S. 9:422.1 pertinently provides:
"If the spouse of the petitioner is the legitimate parent of the child * * * the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
(1) The spouse of the petitioner * * * [has] been granted custody of the child by a court of competent jurisdiction and (2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year * * *."
Appellee and Marian Rose Mann were married in October, 1964. Of this marriage Kevin DeMarc McKenzie and Christopher *691 Allen McKenzie were born on July 4, 1965, and October 29, 1967, respectively. In 1968, the McKenzies were divorced by judgment of the Chancery Court, Adams County, Mississippi, which decree also awarded Mrs. McKenzie custody of the children. On May 4, 1970, the Mississippi Court fixed temporary visiting rights for Appellee and condemned Appellee to pay $50.00 monthly alimony for the support of the children. On April 14, 1971, the Mississippi Court again amended its decree by defining Appellee's visitation privileges with greater particularity and continuing its previous alimony award.
Appellant and Marian Rose Mann McKenzie were married in February, 1970. They established their first matrimonial domicile in Pasadena, Texas, and resided there until August, 1971, when they moved to Slidell, Louisiana. The Steeds have resided in Slidell continuously since moving there. The McKenzie children have resided with their mother and step-father ever since their mother's re-marriage. The Steeds now have a child of their own.
Appellee paid all alimony due his children through November, 1972, and has admittedly paid nothing since. Prior to November, 1972, Appellee exercised his visitation privileges with some degree of regularity. He also maintained contact with the children by mail and sent them presents at Christmas and other occasions. Since November, 1972, he has neither seen the children nor attempted any contact whatsoever, nor sent them presents at any time. In January, 1976, Mrs. Steed received a check for $1,038.20 representing Social Security benefits due the children, commencing in February, 1975, at which time Appellee qualified for Social Security benefits for total incapacity. Since receiving the first check, Mrs. Steed has received monthly Social Security benefits of $97.00 for the children.
It is Appellee's position that his consent to the adoption has not been rendered unnecessary because of his failure to pay child support without just cause. He attributes his failure to pay to his inability to work and earn a living because of prolonged, chronic emotional and mental illness.
Appellee has shown a long history of hospitalization for emotional and mental instability, his first hospitalization having occurred in 1967, during a period of separation from his then wife. At this time he was committed to the psychiatric ward of St. Francis Hospital, in Monroe, Louisiana. When committed, Appellee was residing in Monroe, Louisiana, which city was and has remained the home of Appellee's parents. In January, 1969, Appellee was admitted to Central Louisiana State Hospital, Pineville, Louisiana, an institution for the care and treatment of the mentally ill. In November, 1972, Appellee was committed to Confederate Memorial Hospital, Shreveport, Louisiana, also an institution for the mentally ill, and recommitted to that facility in August, 1974. It suffices to state the record shows evidence of immaturity and emotional and mental instability on Appellee's part from the time of his marriage. During the marriage, at least, Appellee's problems were complicated and aggravated by his excessive consumption of alcohol. There is no evidence of his excessive drinking in recent years.
Since November, 1972, Appellee has resided almost continuously with his parents in Monroe, Louisiana, except for an approximate three-month period in 1974, during which he worked and resided in Texarkana, Texas-Arkansas. This period of employment resulted in earnings of $1,200.00. Except for this three months work, Appellee has been unemployed since November, 1972. He was furnished a home, food and clothing by his parents until February, 1975, when he began receiving Social Security benefits of approximately $190.00 per month for total incapacity due to mental illness. Appellee is presently enrolled in college and is earning approximately $50.00 per month as a tutor of Business Administration courses. Appellee does not own an automobile.
From September 22, 1971, through May 21, 1972, Appellee consulted William N. Tarver, psychiatric social worker, Columbia Mental Health Clinic, approximately three *692 or four times monthly. Tarver characterized Appellee's condition as a state of severe depression to the extent Appellee could not work, attend school or function as a normal person. He advised Appellee to discontinue seeing the children because Tarver felt the visits were upsetting Appellee and aggravating his condition.
Dr. Merritt N. Dearman, M.D., Psychiatrist, first saw Appellee in December, 1974, during a series of visits by Appellee to the Monroe Mental Health Clinic. Commencing December 16, 1975, Dr. Dearman has seen Appellee numerous times as Appellee's private physician. Based on Appellee's history of hospitalization, complaints of withdrawal symptoms and other subjective and objective symptoms, Dr. Dearman diagnosed Appellee's condition as chronic schizophrenia of long duration, probably beginning during Appellee's early life. During 1975, while Dr. Dearman was a consultant for the Monroe Mental Health Clinic, he certified Appellee as being totally incapacitated, which diagnosis was the basis for Appellee's receipt of Social Security benefits.
The record establishes beyond doubt that, commencing in 1971, Appellee has experienced prolonged periods of severe depression, accompanied by virtually complete withdrawal from all normal activities. During these episodes, he remained almost totally uncommunicative, even as to his parents, with whom he resided, and upon whom he was completely dependent for support. The record leaves no doubt as to his unemployability during these periods. It also appears that in recent months, Appellee's condition has improved to the extent he has resumed his college education with the aid of his disability income from Social Security.
LSA-R.S. 9:422.1 is in derogation of the natural right of a parent to his or her child. For this reason, the statute must be construed strictly in favor of the parent. In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963). Ackenhausen, above, also held that the consent of both parents is required for adoption, except where parental consent has been expressly dispensed with, as in the event of failure to pay support as provided by LSA-R.S. 9:422.1, and even in such cases, consent is not dispensed with when it appears that failure to pay was due to reasons beyond the parent's control. In Ackenhausen, above, we note the following pertinent language:
"The statute dealing with support could only mean that consent is dispensed with when the failure to comply with the order of court is without just cause. The Legislature never intended by this provision to dispense with the consent where the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only where the parent refuses to comply with the order or fails to comply with the order without justification. To say that the consent of a legitimate parent is not required when his failure to comply with an order of support was due to sickness or some other situation beyond his control would be absurd, and the Legislature never intended for the statute to be given such an interpretation."
Each case of this nature must be determined in the light of its own peculiar facts and circumstances. Ackenhausen, above; Rodden v. Davis, 293 So.2d 578 (La. App. 3rd Cir. 1974).
In numerous instances it has been held that failure of a parent to make support payments does not dispense with the necessity of his consent to the adoption of his child, where such failure is due to circumstances beyond his control. In re Adoption of Fouts, 254 So.2d 649 (La.App. 4th Cir. 1971); In re Spraggins, 234 So.2d 462 (La. App. 1st Cir. 1970); In re Adoption of Schieman, 204 So.2d 433 (La.App. 4th Cir. 1967); In re Adoption of Bickerstaff, 190 So.2d 117 (La.App. 4th Cir. 1966); In re Hughes, 176 So.2d 158 (La.App. 4th Cir. 1965).
Citing In re Merrill, 246 So.2d 207 (La. App. 1st Cir. 1971); In re Adoption of Moody, 201 So.2d 222 (La.App. 2nd Cir. 1967); Rodden v. Davis, above, and In re *693 Salmon, 318 So.2d 897 (La.App. 2nd Cir. 1975), Appellant contends the trend of recent decisions places emphasis upon the best interest of the child. In this regard, Appellant notes that the children are presently well adjusted in a comfortable pleasant home; that Appellant is able to amply provide for their support considering he is an airline pilot with an annual income of $35,000; that he is willing and anxious to adopt and provide for the children; and, that the children have come to regard and love him as their father.
We note language in the cited cases referring to the "best interest of the children", but we fail to detect therein any indication of a trend to decide cases of this nature, either entirely or primarily upon the mentioned concept. In our view, the basic, primary and fundamental issue in these cases is not the best interest or welfare of the child. Presumably that issue was determined when custody was awarded to the spouse of the party seeking adoption. These cases, we believe, are concerned solely with the basic, inherent right of the parent whose child is sought to be adopted by the spouse of his former mate. We refer, of course, to the right of a parent to prevent the adoption of his child without his consent. We agree with the pronouncement in In re Adoption of Fouts, above, to the effect that courts will not callously overlook the rights of a natural parent who has made a reasonable effort to fulfill his parental obligation to support his children. We conclude this same principle applies to a parent who is incapable of fulfilling this obligation by circumstances beyond his control.
Appellant stresses the fact that Appellee attempted no communication with the children between November, 1972 and institution of this action in October, 1975. Appellee explained that his remission was due to his disturbed emotional and mental state, his lack of transportation, and also to some misunderstanding concerning his visitation privileges and the willingness of his former wife to cooperate in the exercise of his visitation privileges. The record as a whole convinces us that Appellee has not shown a calculated, intentional disregard for the welfare of his children. We are in complete agreement with the trial court's resolution of the factual issues presented on this appeal.
The judgment is affirmed at Appellant's cost.
AFFIRMED.