376 So.2d 555 (1979)
ADOPTION of Rachel Marie LATIOLAIS[1].
No. 7183.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Writ Granted January 11, 1980.
*556 Richard J. Putnam, Jr., Abbeville, for defendant-appellant.
Edwards, Stefanski & Barousse, James M. Cunningham, III, Crowley, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
STOKER, Judge.
This appeal concerns a petition by a stepfather for adoption which is opposed by the adoptive child's actual father. The mother's second husband seeks to adopt her nine and one-half year old daughter under LSA-R.S. 9:422.1. Over the father's opposition the trial court granted the application for adoption. The father appealed the judgment.
The applicant, Kenneth James Guidry, is the second husband of Judy Thibodeaux. She was first married to the opponent, Sherald G. Latiolais. The child in question, Rachel Marie Latiolais, was born of the first marriage. Kenneth James Guidry (referred to hereinafter as "Guidry") seeks to adopt Rachel on the ground that Sherald Glenn Latiolais (referred to hereinafter as "Latiolais") failed to provide support for Rachel for a period in excess of one year prior to the filing of the petition.[2]
*557 There is no issue as to the failure of support. Latiolais however, opposes the adoption on the ground that he had "just cause" for failing to provide support. In his specifications of error, appellant Latiolais complains that (1) the trial court erred in finding that he did not prove just cause for failure to provide child support, (2) the trial court erred in allocating the burden of proof on the issue of just cause by placing it on appellant, (3) the trial court's construction of LSA-R.S. 422.1, permitting adoption under the circumstances, rendered the statute unconstitutional and (4) the trial court erred in holding the statute was constitutional.
Appellant, Latiolais, contends that he was justified in failing to make support payments because of an agreement made between him and the mother of the child. According to Latiolais, his former wife, Judy Thibodeaux (by then married to Guidry) approached him in July of 1977 and made the following proposal: That if Latiolais would cease claiming Rachel as an exemption in his income tax returns and permit the Guidry's to claim the exemption, Latiolais would not be required to make any further court-ordered support payments.[3] Judy Thibodeaux Guidry denies she made such an agreement. There are no witnesses to the agreement. The trial court resolved this issue of fact against appellant. The trial judge appears to have made his resolution to a large extent based upon his holding that appellant bore the burden of proof on the issue of just cause. For this reason, the appellant has made this allocation of burden of proof one of his specifications of error. As we read the trial court's reasons for judgment, he also made a credibility evaluation. Under the circumstances, we do not find that substantial issue exists on the fact finding of the trial court. The record does not support appellant any more than it does Judy Thibodeaux Guidry. Hence, the trial court's finding of fact will not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
On the basis of the trial court's finding, the applicant for adoption was within the terms of conditions one and two of the statute and technically justified a decree of adoption in Guidry's favor. However, other facts in the record, which are quite well established and are substantially admitted, present in our opinion, a substantial question as to whether the adoption should be permitted under the peculiar circumstances of this case. Those facts are that, despite the failure to make court-ordered support payments, appellant has continued to exercise his visitation privileges with his nine and one-half year old daughter on a regular basis and there appears to exist a healthy relationship of love and affection between appellant and his child.
We feel that under the facts and circumstances the adoption should not be permitted and the trial court should be reversed. In order to fully appreciate the facts and circumstances, and the law we shall apply, a fuller statement of the facts is necessary.

FACTS
During the marriage of Sherald Glenn Latiolais and Judy Thibodeaux their daughter, Rachel Marie, was born on March 21, 1969. Judy was granted a judicial separation on November 8, 1971. She was granted custody of Rachel and judgment for alimony in the amount of $80 per month and child support in the amount of $70 per month. Judy was granted a divorce on December 17, 1972. She was again given custody and judgment for alimony and child support in the same amounts as provided in the separation judgment. Judy remarried. She married the applicant Guidry on August 29, 1975. The appellant and opponent Latiolais also remarried. He married Dorothy Hardy on February 25, 1978.
Latiolais' record of payment of child support at the time of trial was admittedly poor. Judy Thibodeaux had taken him to court on one occasion and had applied to *558 him frequently through her attorney and also personally to pay what was in arrears or to pay what was currently due. Latiolais testified his last payment was made on July 1, 1977. At the time of commencement of this application, September 21, 1978, he was 31 months behind in his payments. During the 31 months period he had made only 9 payments. (Payments were payable twice a month in installments of $75 each.) Latiolais claims he had made no payments after July 1, 1977, because of the agreement he alleged was made between him and Judy Thibodeaux. He stated his failure to pay prior to that time was due to financial inability. This claim does not appear to be substantiated.
The record pertaining to the separation and divorce is not included in the record in this appeal, nor are the judgments. It seems agreed, however, that Latiolais was given visitation rights of one day every other week and this was to be exercised on Sundays. The evidence is quite clear in establishing that Latiolais regularly exercised his visitation rights. This is not contested. Occasionally, if he was unable to visit with his daughter on a given Sunday either because of his own inability or illness of Rachel, or for whatever reason, he was permitted to have visitation on the following Sunday. Judy Thibodeaux admitted that at times prior to July 1977, she had denied Latiolais his visitation privileges in an effort to force him to discharge his obligation to pay child support. It appears, however, that no opposition whatsoever, was ever made after July of 1977 or subsequent to the time of the alleged agreement. Latiolais claimed Judy's attitude changed entirely from that time on and, besides that, she ceased to make any mention of or demand payment of child support. Judy Thibodeaux admits she discontinued demanding payments. Her explanation was that she simply gave up because making demand was not doing any good.
After the separation both Latiolais and Judy Thibodeaux claimed their child as an exemption on their income tax returns. Following inquiry by the Internal Revenue Service, the parties seem to have concluded that the father, Latiolais, had the right to claim this exemption. Latiolais claimed the exemption for the years 1971, 1972, 1973, 1974, 1975, and 1976. The record shows that Latiolais did not claim Rachel in 1977 but that Guidry did. (Trial of this matter took place on November 14, 1978.) Judy Thibodeaux disclaims any knowledge of the change until after she gave a deposition, and her husband, Guidry, testified he had not discussed it with her or informed her of his action in claiming Rachel as an exemption.
Latiolais lived with his parents in the county until he remarried, and Rachel lived with the Guidrys in Rayne. After remarriage, Latiolais lived in Lafayette. On the Sunday visitations Latiolais, or occasionally his parents, would pick Rachel up in Rayne, and the day would be spent at the farm belonging to Latiolais' parents. Sunday dinner would be had there. As a result of this pattern, not only Latiolais, but his parents, the grandparents of Rachel, were also afforded an opportunity to visit with her. The place of visitation permitted Rachel opportunity to ride a horse and enjoy other recreation on her grandparents' farm. On occasion, her father took her fishing. Latiolais' visitation was for the day only, but during the period after July 1977, Judy Thibodeaux once permitted Rachel to go overnight with Latiolais in order that she might go on a family camping trip. The testimony indicates that Latiolais and his daughter enjoyed a normal father-daughter relationship of love and affection.
Latiolais was unaware that his failure to pay the court-ordered child support would provide grounds upon which Rachel's stepfather, Guidry, could seek to adopt her. His first notice of any attempt by Guidry to adopt his daughter was when he was served with the petition in this adoption matter. He then tendered the amount necessary to bring support payments up to date.
Judy Thibodeaux is agreeable to her husband's adoption of Rachel and ardently desires it. Other than Latiolais' objections and lack of consent, there are no reasons why the adoption should not take place. *559 The state agency charged with investigating the proposed adoption recommended it, and the trial court found it to be in the best interest of the child. However, the trial court did not refer to any factors to show it was in the best interest of the child. Our own appreciation of the matter is that there were no negative factors, and the only positive factors were that Guidry was the husband of Rachel's mother, and he would be more likely to play a larger role as Rachel's father than her actual father. She was growing up in Guidry's home and would normally see him six days per week to one for Latiolais every two weeks. The adoption decree in this matter ordered that Rachel's last name be changed from Latiolais to Guidry.

JUST CAUSE FOR DENYING ADOPTION
Our research has revealed that the statute in question in this case has been construed only in the context of "just cause" for either failure to provide support or the extent and frequency of payment. It has not been squarely presented with a case in which no support was provided but, where a continuing relationship between the child and the nonsupporting parent was maintained, and a state of mutual regard and affection existed. In the typical case, nonsupport is accompanied by indifference toward the child, or outright abandonment has taken place. The considerations in this case involve an issue that appears to be res nova.
In our approach to the issue, we first note that the provisions of LSA-R.S. 9:422.1 are not mandatory provisions. All that the statute does is to dispense with the necessity of obtaining consent from a legitimate biological parent under the special circumstances where the parents have become divorced and the new spouse of the parent having custody desires to adopt a child of the first marriage. Nothing in the statute grants a stepfather any legal rights in these circumstances. Nothing in the statute requires that the court considering the adoption must grant it merely because the technical conditions of the statute are met.[4] The purpose of the statute, by its very terms, is merely to substitute for consent, otherwise necessary for adoption, the fact of failure to provide support. The support must be court-ordered if the party owing it is within the state; if the party is a non-resident, a court order is not necessary.
Despite these comments the approval of an adoption is not entirely within the discretion of the trial court. In Adoption of Edwards, 369 So.2d 210 (La.App. 3rd Cir. 1979), we noted that adoption should be granted in the absence of extenuating circumstance or "just cause". We also noted that just cause was "a jurisprudential addendum to the statute". In Edwards we also observed that: "It is generally agreed that the statute must be strictly construed against adoption in order that the legitimate parent's rights may be protected." We referred to the following authorities: Steed v. McKenzie, 344 So.2d 689 (La.App. 1st Cir. 1977); Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966); In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963); and the comment at 29 La.Law Review 178. See also the very recent Louisiana Supreme Court case of In re Haynes v. Mangham, 375 So.2d 103 handed down September 4, 1979.
In Edwards we further remarked as follows:
Even where the statutory requirements are met and the nonsupporting parent has forfeited the right of consent, the adoption can be denied in order to serve the best interests of the child. Where, for example, the parent proposing to adopt has been married for a brief period, there is no abuse of discretion in denying the adoption. Domingue v. Thibodeaux, 200 So.2d 784 (La.App. 3rd Cir. 1967).
In the case of In re Ackenhausen, supra, in discussing the matter of just cause, the Court considered it only in the context of failure to comply with a court order for child support. It applied the concept of "just cause" only to those situations which were beyond the control of the non-supporting *560 parent.[5] It announced that refusal to consider justification for nonpayment would be absurd. Ackenhausen held that just cause to fail to provide support would "have to depend on the facts of each case". To the same effect is In re Brannon, 340 So.2d 654 (La.App. 2nd Cir. 1976). Thus far, just cause appears to mean nothing more than that failure to support is beyond control of the parent owing it. Moreover, the beyond control test has been liberally applied in favor of the nonsupporting parent. See Adoption of Rapp, 348 So.2d 107 (La.App. 4th Cir. 1977). The Rapp case reemphasized that it is well settled that adoption statutes are in derogation of a natural right and must be strictly construed. Cf. In re Haynes v. Mangham, supra. It also stated that it is equally well settled that consent of both parents is required before an adoption will be decreed except in those instances where the necessity of parental consent has been specifically dispensed with by law as in LSA-R.S. 9:422.1.
A review of the development of the concept of just cause in Ackenhausen and the cases which have followed it points up that the statute is not one which grants rights to adoption-seeking stepparents, and it is not so inflexible that it entirely removes discretion from the courts. It is simply a remedial statute which dispenses with the rigid requirement of consent of a parent in the circumstances provided for in the statute.
In all adoptions, and particularly the proposed adoption here, a primary factor for the courts to consider is the welfare of the child, or the child's best interests. Domingue v. Thibodeaux, supra; In re Merrill, 246 So.2d 207 (La.App. 1st Cir. 1971) and Adoption of Edwards, supra. Therefore, we are not concerned here solely with the rights of the legitimate father of Rachel Marie Latiolais, but also the best interests of Rachel herself. To allow the adoption decreed by the trial court to stand in this case would end any right of visitation between the father and daughter. It would be tantamount to a pronouncement of death between them. This would extend to the entire Latiolais family, meaning that Rachel's relations with her Latiolais grandparents might be ruptured. The name change (from Latiolais to Guidry) dramatizes this curtain which would be brought down on Rachel's status as a Latiolais, contact with her real father and her privilege of enjoying visits and communication with her Latiolais relatives. (The evidence indicates that there are other collateral relations with whom Rachel has had contact during her visitations conducted at her grandparents' home.)
We confess that the problem we have posed might well have been insoluble for Solomon himself. We are not unmindful of the fact that Rachel's relationship with her stepfather, Guidry, may grow stronger in love and affection than that she has with Latiolais. However, as a matter of discretion, we are reluctant to put an irrevocable end to the nine and one-half year relationship of father and daughter where that relationship has been maintained continuously and on a firm basis. In a very few years, as measured in the life of Rachel Marie, she may make her own choice. She may ultimately consent to her own adoption. LSA-R.S. 9:461. In the meanwhile, we are of the opinion that the communication and association between Rachel Marie Latiolais and her legitimate father and her relatives of the Latiolais side of the family should remain open. The able trial Judge in this case appears to have felt that he was without discretion in this matter, although he held that the adoption sought was in the best interests of Rachel Marie. We disagree on both points. For that reason, we shall reverse the judgment of the trial court.
Our decision in this case should not be construed as condoning nonpayment of child support. We are concerned here *561 solely with a question of adoption. Under the trial court's finding of fact Mr. Latiolais owes all child support which has accrued under the judgment ordering child support. Mrs. Guidry has her remedies.[6] As pointed out in her brief, Latiolais earns substantial income. That he is able to pay is demonstrated by his tender of arrearages after the adoption proceedings were brought. One parent may not withhold support because the parent having custody refuses to let the other exercise visitation rights. In re Genin, 240 So.2d 46 (La.App. 4th Cir. 1970); In re Merrill, 246 So.2d 207 (La.App. 1st Cir. 1971) and In the Interest of Haynes, 368 So.2d 783 (La.App. 2nd Cir. 1979), reversed on other grounds In re Haynes v. Mangham, supra.
By reason of our holding in this case in favor of appellant and opponent Latiolais, it is not necessary that we consider the constitutional issues raised by him. It is a settled judicial practice for courts to decline to determine the constitutionality of laws unless such a determination is necessary for a disposition of the cause. Johnson v. Welsh, 334 So.2d 395 (La.1976). Moreover, as held by this authority, constitutional issues may not be raised unless such are specially pleaded, and the grounds therefore are particularized. There is a serious question whether raising such issues in a trial court by means of an application for new trial meets this requirement. Jarred v. Jarred, 355 So.2d 566 (La.App. 3rd Cir. 1978).
For the foregoing reasons, the judgment of the trial court is reversed. It is ordered that there be judgment herein against petitioner, Kenneth James Guidry, denying his application for adoption of Rachel Marie Latiolais. Costs of these proceedings and of this appeal are taxed to petitioner-appellee.
REVERSED AND RENDERED.
DOMENGEAUX, J., concurs and assigns reasons.
DOMENGEAUX, Judge, concurring.
I agree with the articulate majority opinion and its conclusion, but will concur for the sole purpose of making a brief reference to three cases having to do with adoption under La.R.S. 9:422.1. I authored two of those, and was a member of the panel on the third. Rodden v. Davis, 293 So.2d 578 (La.App. 3rd Cir. 1974); Burson v. Lasseigne, 337 So.2d 663 (La.App. 3rd Cir. 1976); and Berry v. Berryhill, 330 So.2d 405 (La.App. 3rd Cir. 1976). In each case the adoption was allowed, but the facts and circumstances in those cases are readily distinguishable from those in this case. In Rodden and Burson the legal fathers avoided all parental responsibilities, and in Berry the legal father made no court ordered child support payments for over a year, during which time he had no contacts with his children.
NOTES
[1] This caption is styled as listed in the petition, the trial court judgment and in the transcript of the record prepared for this appeal. To avoid confusion, we employ this styling although it does not comply with LSA-R.S. 9:424.
[2] The applicable statute LSA-R.S. 9:422.1 reads as follows:

§ 422.1 Adoptions by step-parent, grandparent; consent
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary if the first and second or the first and third conditions exist:
(1) The spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction and
(2) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year or
(3) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
[3] Both parties appear to have been under some erroneous impressions as to their rights under income tax law.
[4] Comment, Work of Appellate Courts1967-1968, 29 Law Review 171 at 178 et seq.
[5] As examples, just cause has been found in the following circumstances: Not knowing the whereabouts of the child, Burson v. Lasseigne, 337 So.2d 663 (La.App. 3rd Cir. 1976); disability of the parent owing support, In re Adoption of Fouts, 254 So.2d 649 (La.App. 4th Cir. 1971) and involuntary incarceration during the period support is owed, Adoption of Rapp, 348 So.2d 107 (La.App. 4th Cir. 1977).
[6] Civil and criminal remedies are available. LSA-R.S. 14:74 and 75 (criminal) and LSA-C. C.P. art. 3945. Since 1977, a party having custody and to whom child support is owed may, in addition to obtaining an executory judgment for past due child support, obtain attorney fees for enforcement of the obligation. LSA-R.S. 9:305. In the civil remedy the errant parent may also be subjected to penalties for civil contempt. LSA-C.C. art. 224(2) and LSA-R.S. 13:4611.