BARRY, Judge.
Appellant W.P.B.[1] petitioned to adopt his minor stepdaughter, T., who was born during his wife’s prior marriage to the natural father. The Juvenile Judge denied the adoption without written reasons, simply stating: “The Court believes it to be in the best interest of the child to deny the pro *667 posed adoption.” We fail to find any reason why the adoption was denied.
The child was born on January 21, 1976. The parents separated in January, 1977 and were divorced on January 11, 1979. The ex-wife obtained legal custody of the child, then 3 years old, and $100.00 per month child support. The mother and appellant married in November, 1980 and the child has resided with them since.
The father refused to consent to the adoption, so on January 17, 1983 appellant proceeded under LSA-R.S. 9:422.1, which provides in pertinent part:
If the spouse of the petitioner is the legitimate parent of the child ... then the consent of the other legitimate parent is not necessary when the spouse of the petitioner ... [has] been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) the other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
[[Image here]]
Following the parents’ divorce in 1979, the paternal grandparents paid the child support until January, 1981, a few months after the mother married appellant. It is clear that the father failed to support his child for well over one year prior to the adoption petition. However, he claims to have a mental illness which prevents him from steady employment; thus, he urges there was just cause beyond his control to relieve him of his support obligation. See In Re Ackenhausen, 244 La. 730,154 So.2d 380 (1963).
The father was hospitalized several times from 1978 through 1980 and was under out-patient care and on medication at the time of trial. He cites Steed v. McKenzie, 344 So.2d 689 (La.App. 1st Cir.1977) wherein a natural father’s consent to adoption was necessary despite non-payment of child support due to a claimed inability to work because of prolonged, chronic emotional and mental illness. However, the father’s mental problem (personality disorder) falls short of the severe illness in Steed. His psychiatrist, Dr. Escaloda, testified that he could not say that the father had a mental disorder which prevented employment. In fact, the father (who attended college for 3 years) had several jobs but quit each one after a few weeks because the hours were inconvenient, transportation was a problem, etc. He has not been hospitalized since 1980. The father testified he was not seeking employment because he could not afford bus fare to apply. He, his present wife and her child live on $633 monthly disability income. Interestingly, he said a job would interfere with his obligation to care for his 70% mentally disabled, pregnant wife and her 9 year old son. In 1982 he received $5,800 personal injury settlement, and used part of the funds ($600) to reimburse his parents. He did not give any of the money to support his daughter.
Even though most of the evidence concerns the father’s ability to pay child support, the trial judge made no determination on that issue. In denying the adoption, the Court relied on the “best interest” standard so it apparently concluded that the father failed to prove his mental disability. Thus, his consent to the adoption was pre-empted by R.S. 9:422.1 and he did not establish legal cause (his alleged mental disability) to circumvent his obligation to support.
Adoption of Latiolais, 384 So.2d 377, 378 (La.1980) set forth the following guidelines:
R.S. 9:422.1 does not set the criteria to be used in determining whether or not an adoption shall be granted. It applies only to the narrow question of whether parental consent shall be required when a minor’s adoption is sought. The best interest of the child is the major standard to which a court must look before it can determine when or whether to order an adoption.
Our concern is to look closely at the record and apply the “best interest” standard. The confidential report by the Department of Health and Human Resources (DHHR) notes that the divorce decree al *668 lowed the father to visit his daughter at his parents’ home, but he did not see her for months at a time. Importantly, the DHHR report stated: “This child appears to be happy, healthy and well-adjusted. She definitely wants to be adopted by her stepfather.” (our emphasis)
The child’s mother and stepfather attested to a close, loving relationship between the child and her stepfather. The child was less than a year old when her parents separated and her stepfather is the only father she has known. According to her mother, the child loves her stepfather very much. She calls him “Daddy” and is eager for him to be her “real” father. The stepfather testified he loves his stepdaughter very much and wants to rear and prepare her to cope with life as an independent, secure woman. Unquestionably, the child’s apparent happiness must be attributed to the family environment provided by her mother and stepfather.
By contrast, it is significant that the father did not maintain a continuing relationship with his daughter since her birth. The father’s brief says he has seen the youngster sporadically on holidays, birthdays and other occasions. In his testimony he said the only place he saw his child was at his parents’ home and they arranged for the mother and stepfather to be there too. At the time of trial in April, 1983, he had not seen his daughter for almost four months. He claimed that “half the time I didn’t even know where they lived....” He made an attempt to locate his ex-wife by checking the New Orleans telephone directory, but did not consult the Jefferson Parish directory or ask his parents where his daughter was living. He said his ex-wife’s parents would not reveal her whereabouts.
The trial judge did not provide any basis to support his statement that it was in the child’s best interest to deny the adoption. There was no finding that the father and his daughter had a meaningful relationship, nor was one probable or even possible. No relationship existed, so none could be re-established.
Under these extraordinary, but clear, circumstances, we find it insufficient to simply rely on the phrase “best interest” in order to overcome the clear and convincing evidence that the child should be adopted by her stepfather. It is obvious that the father has forsaken the opportunity to share his life with his child. Instead, he is totally devoted to his new family. Even though the father claims he is unable to work and support his own child, he filed to adopt his present wife’s child. To compound the situation, his wife was four months pregnant at the time of trial.
We considered the “fundamental liberty interest” concept of a natural parent which- is protected by Amendment XIV to the U.S. Constitution. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The standard of proof required to terminate parental rights in neglect cases does not alter our conclusion that this natural father effectively abandoned his child, both legally and morally. The evidence not only preponderates in favor of the adoption, we are satisfied it is clear and convincing and to hold otherwise was clearly wrong.
The Juvenile Court judgment is therefore reversed; judgment is hereby rendered ordering the adoption of the minor child, T., by petitioner, W.P.B. This matter is remanded to the Juvenile Court to comply with statutory requirements in furtherance of the adoption.
.REVERSED; RENDERED; REMANDED.

. The parties' names are anonymous to maintain confidentiality of the proceedings.