312 So.2d 912 (1975)
In the Interest of Leonard Keith JACKSON.
No. 6009.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1975.
Stephen J. Hornyak and Dominick Savona, Jr., Gretna, for proponent-appellee.
F. L. Morris and Philip R. Johnson, Metairie, for respondent-appellant.
Before REDMANN and LEMMON, JJ., and BOURG, J. Pro Tem.
*913 LEMMON, Judge.
This action to declare Kenneth Jackson's minor son abandoned within the purview of R.S. 9:401-407 was initiated by the affidavit of a juvenile court probation officer. The trial court decreed the child abandoned after a trial on the merits, at which Mrs. Robert Gossett (the child's mother and Jackson's former wife) appeared as proponent of the abandonment charge.
The principal issue in this court is whether the evidence established that Jackson "refused to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid all parental responsibilities." R.S. 9:403.
Jackson and Mrs. Gossett were divorced in Georgia in August, 1967, with custody being awarded to the mother, who moved to Louisiana. The child visited Jackson in Georgia several times thereafter, but on two occasions a dispute developed over the child's return, and Mrs. Gossett resorted to legal process. Mrs. Gossett refused to allow further visitation in Georgia.
At the time of trial in April, 1973, Jackson had not seen his son since July, 1970. Mrs. Gossett testified that she told Jackson he could visit the child in Louisiana, but that he had never availed himself of the opportunity. On the other hand, Jackson stated he was intimidated by Mrs. Gossett's threats of arrest if he came to Louisiana, and that she would not even let him talk to the child on the telephone.
As to the issue of failure to provide for care and support, Jackson had been ordered by the divorce judgment to pay weekly child support in the amount of $32.50. Alleging he had not complied with this order, Mrs. Gossett instituted a proceeding under R.S. 13:1641, the Uniform Reciprocal Enforcement of Support Law, and obtained judgment in September, 1970, which again ordered Jackson to pay support in this amount. He thereafter made seven weekly payments in five checks, the last one dated December 24, 1970.[1]
Allegedly on the advice of his attorney not to make further payments while he was being denied visitation privileges, Jackson discontinued support completely. When Mrs. Gossett reactivated the U.R.E.S.A. suit, however, Jackson paid $780.00 on March 3, 1972, tendering this payment upon exacting Mrs. Gossett's agreement to forego prosecution of the non-support charge.
Jackson further testified that he sent two $20.00 checks in April, 1972 and one $60.00 check in May to the Clerk of Court, as ordered by the Georgia court; that these were returned to him in August;[2] that, upon advice, he then sent a check, dated July 23, in the amount of $160.00 to the Welfare Department in Baton Rouge; and that when this check was returned, his attorney advised him to simply wait and "sooner or later you'll hear from it, they'll have you in court." The uncashed checks were introduced as supportive evidence, along with the clerk's envelope of transmittal.
Arguments in this court focused on the factual dispute as to support payments between March and October, 1972. The trial judge in extensive reasons for judgment expressed suspicion as to whether Jackson actually mailed the July, 1972 check to the Welfare Department and concluded that Jackson "maintained his previous course of conduct of never paying child support until and unless further court proceedings were brought against him." The judge observed *914 that a truly concerned parent would have provided necessary support directly when it became apparent the Georgia clerk was not processing the checks.
We agree Jackson was neither diligent nor regular in providing support payments. If unjustified, this failure may be grounds for imposition of criminal sanctions. Nevertheless, a decree of abandonment, which irrevocably breaks one of the closest and most fundamental human relationships, must be based on evidence of circumstances clearly manifesting the parent's intention to permanently evade all parental duties. Because of the harsh and incommutable consequences, all reasonable doubt should be resolved against entering such a decree. State in Interest of Sharp, 219 So.2d 317 (La.App. 1st Cir. 1969); State in Interest of Fischbein, 194 So.2d 388 (La.App. 4th Cir. 1967).
In State in Interest, of Vines, 130 So.2d 445 (La.App. 2nd Cir. 1961) the reviewing court upheld a decree of abandonment, when the children had been placed with foster parents by the juvenile court and neither the father nor mother had provided any support for or manifested any interest in the children for over four years.
In the Fischbein case, after the paternal grandparents' attempt to adopt the child was opposed by the mother, an abandonment action was filed, alleging failure of the mother to pay court-ordered support of $15.00 per week over a period of four months. This court reversed the judgment which declared the child abandoned, finding that the mother had made efforts to provide support within her means and that no other evidence had been presented to indicate her intent to avoid parental responsibility.
In the Sharp case a widower, after making several arrangements for child care which did not work out, agreed with the Department of Public Welfare for the latter to provide care for the child, while he contributed monthly support. After making three monthly payments, the father did not pay any support or visit the child over the next five months, at which time he remarried and requested the child's return. The First Circuit reversed the abandonment adjudication, holding that while the father had failed to support the child for four months, the circumstances did not sufficiently indicate his intent to permanently abdicate responsibility.
In the present case Jackson several times allowed four months to pass without providing support for the child. These circumstances indicated his intent not to support his child unless he was forced to do so (or, as he suggests, unless he was provided visitation rights). Nonsupport is not synonymous with abandonment, but is only evidence tending to establish abandonment. The circumstances of this case did not clearly manifest Jackson's intention to permanently avoid all parental responsibility.
Furthermore, Jackson's behavior did not create a situation such as the abandonment action was designed to cover.[3] The action to declare a child abandoned is a legislatively ordained procedure in which the state, without parental consent, can summarily place a child with an agency, defined in R.S. 9:401(1), when the child has been deserted or abandoned by his parent or parents. The procedure was not designed to afford a method for one parent to terminate the parental rights of the other; rather, the objective was to allow the juvenile court to place an abandoned child with an agency or designated person in the child's best interest. While a child who has been judicially declared abandoned can thereafter be placed for adoption by the agency in an agency adoption proceeding, the action to declare a child abandoned was not intended as a first step in a private adoption proceeding or as a method of *915 dispensing with parental consent in such a proceeding.
The abandonment proceeding has perhaps been used to circumvent the consent requirement for adoption. See Pugh, Juvenile Law of Louisiana History and Development, Ch. III, p. 276 (1957). However, the legislature in 1958 adopted R.S. 9:422.1 as a means in certain adoption cases of dispensing with the consent of a parent who culpably fails to support his child. Indeed, Jackson may have already forfeited his right to contest a stepfather's adoption suit by failing for one year to support the child in the mother's custody. However, that question is properly raised in an action for adoption.
The action before us is one by the state to declare the child abandoned, and proof of intent to forever avoid all parental responsibility is a necessary element of this action.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that the action be dismissed.
Reversed and rendered.
BOURG, J., concurs in the result.
NOTES
[1] Apparently, the checks, the divorce judgment, and the record in the U.R.E.S.A. suit were before the trial judge, as he referred to this information during the testimony and in his reasons for judgment. However, these items were not introduced into evidence.
[2] This testimony was corroborated to some extent by a deputy clerk, who described confusion in the Clerk's office during that period because of the Clerk's incapacity. She recalled seeing at least two of the checks on the Clerk's desk during that approximate time period.
[3] If the custodial parent needs child support, the U.R.E.S.A. action is available. If the stepparent desires to adopt the child, the action for adoption is available.