**Diane KING, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Resources, Defendant-Appellee.**

No. 80–3052.

United States Court of Appeals, Fifth Circuit. Unit A

June 8, 1981.

---

542

Fine, Waltzer, Winters & Bagneris, Michael G. Bagneris, New Orleans, La., for plaintiff-appellant.

Lillie Price, Dept. of H. E. W., Baltimore, Md., for defendant-appellee.

Before BROWN, GEWIN * and POLITZ, Circuit Judges.

GEWIN,* Circuit Judge:

Claimant-appellant Diane King has petitioned this court for relief from the summary judgment order rendered by the district court for the appellee in Ms. King's suit to collect surviving child benefits under the Social Security Act (hereinafter referred to as the Act). In order to determine the propriety of the trial court's decision we must examine the following two issues: (1) whether the district court correctly ascertained that the Secretary-appellee's decision in the case at bar was supported by substantial evidence and followed the correct legal standard; and (2) whether 42 U.S.C.A. § 416(h)(3)(C) is constitutional. Reasoning that both inquiries must be answered in the affirmative, we affirm.

The ensuing rendition of facts is undisputed. Diane Stewart, now known as Diane King, was born on August 24, 1958 to Hester Neal and Abe Stewart in New Orleans, Louisiana. Just two months later, she was given by her natural mother to Hattie Mae King, the herein deceased wage earner. Thereafter, Hattie King cared for, provided for, educated, loved, and nourished the appellant as if she were her own child.

Beginning in May of 1963, while living in Louisiana, Hattie King received social security disability benefits. On October 1, 1964, she submitted an affidavit to the Secretary requesting additional aid so as to better provide for Diane. In this written statement, Hattie King noted that she intended "to institute legal proceedings for the formal adoption of the child as soon as ... [she was] able to secure counsel through the legal aid society or [from] some other [form of] assistance." Record Vol. II

at 45. Irregardless of these expressed purposes, it is undisputed that the claimant was never legally adopted by Hattie King before her death in Louisiana on May 8, 1972.

Subsequently, two applications were made on behalf of Diane King for surviving child insurance benefits. Each was denied by the Secretary's district office on the ground that she was not found to be a "child" of the deceased wage earner, Hattie King, as defined under the terms of the Act.[1] Later consideration[2] of appellant's claim by an administrative law judge reached the same result. This decision was adopted by the Appeals Council on September 22, 1977 thereby becoming the Secretary's final determination on the matter.

Appellant thereafter sought judicial review of the Secretary's decision in district court. At that juncture, appellee moved for summary judgment. After all matters were thoroughly briefed and argued orally, a Magistrate submitted her findings of fact and conclusions of law recommending that the Secretary's motion for summary judgment be granted. Appellant petitioned for review of the Magistrate's order. On December 17, 1979, after a hearing on the motion for review, the trial judge denied the claimant's request while simultaneously approving and adopting the Magistrate's opinion and recommendation to grant the motion for summary judgment. Four days later, appellant filed a timely notice of appeal with this court.

Before discussing the first issue at length, we must remember that the judiciary plays only a very "limited role in reviewing the disposition of social security benefit claims." *Ferguson v. Schweiker*, 641 F.2d 243, 245 (5th Cir. 1981). Factual findings of the Secretary are to be left undisturbed unless they are not supported by substantial evidence. *Western v. Harris*,

---

* Judge Gewin prepared the above opinion before his death May 15, 1981.

1. This conclusion was based on 42 U.S.C.A. § 416(h)(2).

2. The ALJ considered all the relevant provisions of the Act normally used to determine if a claimant is a "child" of a deceased wage earner for purposes of receiving surviving child benefits. 42 U.S.C.A. §§ 402(d)(1), 416(e), 416(h)(2)(A), 416(h)(2)(B), & 416(h)(3)(C).

633 F.2d 1204 (5th Cir. 1981); *Fruge v. Harris*, 631 F.2d 1244 (5th Cir. 1980); 42 U.S.C.A. § 405(g). Therefore, our immediate duty is to determine whether the district court properly concluded that the Secretary's denial of Diane King's claim was supported by substantial evidence.[3] If it was, then summary judgment was proper.

Initially, the Secretary noted that the child insurance benefits provision of the Act reads, in pertinent part, as follows:

> Every *child* (as defined in section 416(e) of this title) of an individual entitled to old-age or *disability insurance benefits*, or of an individual who *dies a fully or currently insured individual*, if such child— ... [satisfies certain requirements not relevant to the instant appeal] (c) was *dependent* upon such individual—... [other irrelevant criteria] shall be entitled to a child's insurance benefit ....

42 U.S.C.A. § 402(d)(1) (emphasis added). In order to recover benefits, this section required that Diane King show the Secretary three things: (1) that she was a "child" of the deceased wage earner; (2) that the wage earner was receiving disability insurance benefits or died a fully or currently insured individual; and (3) that she was dependent upon the wage earner. Both parties to this appeal conceded that the latter two requirements were in fact satisfied, however, the resolution of the dispute turned upon whether the claimant was the "child" of Hattie King. Such a determination required the Secretary to examine 42 U.S.C.A. § 416(e). That section, in pertinent part, defined the term "child" as one who was: "(1) the child or legally adopted child of an individual, (2) a stepchild ..., and (3) a person who is the grandchild or stepgrandchild of an individual or his spouse...." It was uncontroverted that the claimant was not the legally adopted child, the stepchild, the grandchild, or the stepgrandchild of the deceased wage earner. Therefore, the Secretary was forced to seek further statutory elucidation of the term "child".

■ The appellee subsequently discovered that Congress had seen fit to provide three alternative tests for determining whether an individual was the child of a wage earner.[4] The first, under 42 U.S.C.A.

---

**3.** The Secretary made the factual determination that the appellant was not the "child" of the deceased wage earner. Thus, claimant was found to not be entitled to surviving child benefits. Our task necessitates that we first look at the statutory tests the Secretary used to decide if Diane King was the "child" of Hattie King and then ascertain whether these tests were properly applied. If properly applied, we must then discover whether the Secretary's conclusions were supported by substantial evidence.

**4.** Although the Secretary considered the second and third tests respectively, they were determined to be inapplicable to the case at bar. We agree in every respect.

The second test, found at 42 U.S.C.A. § 416(h)(2)(B), reads as follows:

> If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual *if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them* which, but for a legal impediment in the last sentence of paragraph (1)(B), would have been a valid marriage. (emphasis added).

This section was found to be useless to the Secretary because there never was a purported marriage between the wage earner and the claimant's natural father, Abe Stewart.

Furthermore, the third test, under 42 U.S.C.A. § 416(h)(3)(C), was irrelevant to the instant case, according to the Secretary, inasmuch as it was only intended to expand surviving child benefits coverage to include illegitimates. *See* S.Rep.No.404, 89th Cong., 1st Sess., *reprinted in* [1965] U.S.Code Cong. & Ad.News 1943, 2049–50 (the legislative history makes mention of children "born out of wedlock" and their inheritance rights). Since Diane King was a foster child, this provision was an inappropriate test of whether she was covered. The third test reads, in pertinent part, as follows:

> (3) An applicant *who is the son or daughter* of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual *if:* ... (C) In the case of a deceased individual—(i) such insured individual—(I) had acknowledged in writing *that the applicant is his son or daughter, (II) had been decreed by a court to be the father of the applicant, or (III) had been* ordered by a

§ 416(h)(2)(A), stated, in pertinent part, as follows:

> In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, *the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State . . . in which he* [the insured individual] *was domiciled at the time of his death . . . .* (emphasis added).

Applying the appropriate Louisiana law[5] under this analysis, the Secretary found that Diane King could not be considered a "child" of Hattie King.[6] The Magistrate concurred in that determination and the district court agreed with the Magistrate's reasoning. We conclude that the Secretary properly applied only this first test and her findings were supported by substantial evidence. Therefore, the district court's decision granting summary judgment for the appellee was correct in every respect.

We must now turn our discussion towards a constitutional analysis of 42 U.S. C.A. § 416(h)(3)(C)[7] as required by the second issue raised by claimant on this appeal.[8] The appellant contends that the district court's application of this expansive section[9] only to illegitimates unable to inherit by intestacy in the appropriate state is violative of the equal protection guarantee implicit in the due process clause of the fifth amendment because such illegitimate-biological children may then receive benefits thereby being treated differently from similarly situated foster children in a state not recognizing equitable adoption for purposes of intestate succession. Although it is indeed unfortunate that the claimant's eligibility[10] for benefits is governed by a state

---

court to contribute to the support *of the applicant because the applicant was his son or daughter, and such acknowledgement, court decree, or court order was made before the death of such insured individual, or (ii) such insured individual is* shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support *of the applicant at the time such insured individual died. (emphasis added).*

**5.** Since the insured, Hattie King, was domiciled in the State of Louisiana at the time of her death.

**6.** The Secretary discovered that the State of Louisiana had steadfastly upheld the relationship between parents and their natural/biological offspring. This most fundamental of human relationships could only be severed under Louisiana law by following the specific statutory provisions for surrender, abandonment, and adoption. La.Rev.Stat.Ann. §§ 9:401–462. If it were ascertained that a child was surrendered or abandoned, then they were necessarily placed with a state agency for adoption. An adopted person, under Article 214 of the Louisiana Civil Code, was found to be treated as the legitimate child and forced heir of the adoptive parent for purposes of inheritance. Diane King was found to have never been legally adopted under the Louisiana statutes. Thus, she could not have inherited from the wage earner as an adoptive heir or a natural child since she was only a foster child of Hattie King. Consequently, she was not the "child" of Hattie King under Louisiana law. Furthermore, the Secretary came to the conclusion that the claimant could not have possibly been said to be the equitably adopted child of the wage earner either since this status was not recognized in Louisiana. *See Steed v. McKenzie,* 344 So.2d 689 (La.App. 1977); *In re Jackson,* 312 So.2d 912 (La.App. 1975); *Rodden v. Davis,* 293 So.2d 578 (La. App.), *cert. denied,* 296 So.2d 832 (La.1974); *Roy v. Speer,* 184 So.2d 796 (La.App.), *aff'd,* 249 La. 1034, 192 So.2d 554 (1966); *In re Hughes,* 176 So.2d 158 (La.App.1965).

**7.** Since the Secretary did in fact discuss the constitutional aspects of this section on appeal, we find it unnecessary to delve into any analysis of the appellee's contentions that not only did the claimant have no standing to raise this issue but that the question was being raised inappropriately for the first time on appeal.

**8.** Although the appellant argued the unconstitutionality of 42 U.S.C.A. § 416(h)(2)(A) in the district court, she did not question its fifth amendment comportment on appeal. Nonetheless, if she had chosen to do so, we would have affirmed the constitutionality of the provision just as the district court below has done. *See DeSylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1955) (definition of children in federal statute can be controlled by state law since there is no federal law of domestic relations); *Gray v. Richardson,* 474 F.2d 1370 (6th Cir. 1973).

**9.** *Supra* note 4, at 544, 545.

**10.** As determined only under 42 U.S.C.A. § 416(h)(2)(A). *Supra* note 4, at 544.

following the minority rule as to equitable adoption, this unusual fate does not mandate that § 416(h)(3)(C) be found constitutionally invalid.

 The claimant admits that equitably adopted children do not constitute a suspect class. Furthermore, no fundamental right is adversely affected by this statute.[11] Thus, the traditional rational basis test is the appropriate standard of constitutional review. J. Nowak, R. Rotunda, & J. Young, Handbook on Constitutional Law at 517–19 (1978). Under this form of analysis, "a legislative classification must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973). "In the area of . . . social welfare . . ." a statutory scheme differentiating somewhat in its treatment of certain classifications will not be invalid under the rational basis test if any state of facts may be reasonably perceived to justify it. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970). Although this standard of review is not "toothless", statutory provisions for the governmental payment of monetary benefits are afforded a strong presumption of constitutional validity. *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389, 393–94 (1976).

 As noted in *Geduldig v. Aiello*, 417 U.S. 484, 495, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256, 263–64 (1974), a legislative body's choice to remedy one phase of a social welfare problem while neglecting others is not inconsistent with the mandates of equal protection,[12] and the judiciary will not impose its judgment as to the appropriate dividing line so long as the legislature's distinction is rationally supportable. "There is nothing in the Constitution . . . that requires . . . [any legislative body] to subordinate or compromise its legitimate interests solely to create a more comprehensive social insurance program than it already has." *Id.* at 496, 94 S.Ct. at 2491, 41 L.Ed.2d at 264. More importantly, "[t]he fact that social security benefits are financed in part by taxes on an employee's wages does not in itself limit the power of Congress to fix the levels of benefits under the Act or the conditions upon which they may be paid." *Richardson v. Belcher*, 404 U.S. 78, 80, 92 S.Ct. 254, 256, 30 L.Ed.2d 231, 234 (1971).

Section 416(h)(3)(C) is rationally related to a number of legitimate governmental purposes. This provision represents a legitimate exercise of Congress' power to protect the social security trust fund. *See Califano v. Jobst*, 434 U.S. 47, 58, 98 S.Ct. 95, 101, 54 L.Ed.2d 228, 237 (1977). Not only does it curb possible abuses against the fund by sifting out spurious claims[13] but it facilitates the legislative purpose of benefiting one of those types of children Congress presently perceives as most likely being desperately dependent upon the deceased wage earner for support. Moreover, it helps the Secretary avoid the endless case-by-case determinations that would otherwise be necessary. *Mathews v. Lucas*, 427 U.S. 495, 509, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651, 663 (1976) (administrative convenience is the end result when the burden and expense of case-by-case adjudication is

---

**11.** Social security benefits are not property interests. *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

**12.** The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think . . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others . . . . The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.
*Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955).

**13.** It discourages potential claimants from being taken into another's household merely for the purpose of later attempting to collect surviving child benefits under the Act.

avoided; such was found by the Court to not be violative of the fifth amendment's equal protection guarantees). These afore-mentioned objectives of § 416(h)(3)(C) are policy choices representing "matters of practical judgment and empirical calcula-tion ... for Congress", not for the courts. *Id.* at 515, 96 S.Ct. at 2767, 49 L.Ed.2d at 667. Consequently, we find that § 416(h)(3)(C) is constitutional.

In conclusion, pursuant to our discussion on both issues, we affirm.

AFFIRMED.